Margaret B. BRICE, Appellant,

v.

Thomas H. BRICE, Appellee.

No. 13822.

District of Columbia Court of Appeals.

Argued June 19, 1979.

Decided Jan. 9, 1980.

Christopher S. Howell, Washington, D. C., for appellant.

Josiah Lyman, Washington, D. C., for appellee.

Before NEWMAN, Chief Judge, and HARRIS and FERREN, Associate Judges.

FERREN, Associate Judge:

This case presents two questions in connection with a final divorce decree: (1) whether real property (the marital home) acquired shortly before the marriage, solely by and in the name of the husband, was

properly assigned to the husband, *see* D.C. Code 1978 Supp., § 16–910(a), or instead should have been considered marital property, and, accordingly, allocated between the spouses on an "equitable, just and reasonable" basis, *id.*, § 16–910(b); and (2) whether the trial court made adequate findings with respect to the child's needs and the parties' net incomes for purposes of awarding child support. We affirm the trial court's determination that the property has always belonged to the husband, and that the wife has no equitable claim to it. We also conclude, however, that in awarding child support the trial court failed to make adequate findings on the financial needs of the child and the disposable net incomes of the parents. We therefore must remand for further proceedings.

### I.

Margaret and Thomas Brice were married in 1968. Mrs. Brice had three minor children from a prior marriage who lived with the Brices. In 1969, Anthony Leonard Brice—the only child of the Brice marriage—was born. In 1975, relations between Mr. and Mrs. Brice broke down and they separated, although they both continued to live in the family house. On June 26, 1978, the trial court granted an absolute divorce, which neither party contests.[1]

Mrs. Brice sought a one-half interest in the real property located at 1517 Montana Avenue, N. E., which had been the marital home during the ten-year marriage. She also sought custody of their son, Anthony, and $450 per month in child support for him. Mr. Brice argued that legal title to the property should remain solely in his name. He also opposed the requested $450 monthly child support but agreed to pay $150 (plus $50 per month toward an insurance policy for their son's education).

The principal focus of the dispute is the real property—the house in which Mr. and Mrs. Brice, their son, Anthony, and Mrs. Brice's other children lived. Mrs. Brice argues that her husband gave her an interest in the house as a wedding present. Alternatively, she contends that there was an antenuptial agreement providing her with an equitable interest in the house.[2]

■ Mr. Brice denied that he had made such a gift.[3] He introduced a deed and

---

1. Mrs. Brice filed a complaint for absolute divorce based on a one-year voluntary separation on March 10, 1977, approximately one month before the effective date (April 7, 1977) of the Marriage and Divorce Act, D.C.Code 1978 Supp., §§ 16–901 *et seq.* On May 3, 1977, Mr. Brice counterclaimed for absolute divorce on the ground of desertion, which is no longer a ground under the 1977 Act. The trial court, in its judgment and order of June 26, 1978, granted an absolute divorce to Mr. Brice on the ground of voluntary separation for more than one year without cohabitation. Both parties, in their pleadings, had cited the new Marriage and Divorce Act, D.C.Code 1978 Supp., § 16–904(a). We note that under amended § 16–904(a), references to fault (*see* trial court Findings 17 and 18) are no longer required, and a divorce should have been awarded to both parties for voluntary separation under § 16–904(a)(2). Since neither party contests the divorce decree, however, we need not remand for correction of the judgment.

2. Pursuant to the alleged agreement, she would pay the food, clothing, household furnishings, and phone expenses and perform all the household chores, while he would make all the payments on the house. More specifically, Mrs. Brice testified:

Q: Did you and Mr. Brice reach an understanding with respect to the house prior to its purchase?
A: Well, the understanding, what that was that Mr. Brice was purchasing this house as a wedding gift and that he would take care of certain things and I would take care of the house, the food, making clothing and upkeep and the children.
Q: What did he agree to pay with respect to that house?
A: The mortgage and utilities. I would pay the phone bill and the food and Anthony's clothing and the other two kids—my other three kids—sorry.
        *     *     *     *     *     *
Q: What were the terms of that understanding or agreement?
A: The terms was that he would pay the house note and he would pay the utilities. I would furnish food, clothing, and the furniture for the house and some of the upkeep, depending on what the price was.

3. We agree that, despite testimony by Mrs. Peola Spurlock supporting Mrs. Brice's allegation of a gift, the record supports the trial court's implicit finding that no gift had been made. Mr. Brice testified that he had wanted

other evidence to show that he had acquired legal title to the house approximately two months before the marriage, that he had retained title, and that he had made the entire financial contribution to the house: the down payment, all settlement charges, mortgage payments, taxes, insurance, and improvements. He also denied that there had been an antenuptial agreement covering the property.

The trial court made no findings with respect to the alleged antenuptial agreement but did find that the title and fee had "always been exclusively in the name of Thomas H. Brice, from the date of its purchase to the present time"; that Mr. Brice had made all the financial payments on the house; that Mrs. Brice's "name was not on the deed as co-owner"; and that Mrs. Brice "had not shown a right to be declared a co-owner of an interest in the property." The court "awarded and granted the full title and fee . . . exclusively, solely, and alone" to Mr. Brice.

## II.

This court recently reviewed the law of the District of Columbia relating to the disposition of property upon divorce, as it had developed prior to the District of Columbia Marriage and Divorce Act of 1977, D.C.Code 1978 Supp., §§ 16–901 et seq., and as clarified by § 16–910 of the new Act.[4]

In *Hemily v. Hemily*, D.C.App., 403 A.2d 1139 (1979), the real property at issue appeared to fall under § 16–910(a) (sole and separate property acquired during the marriage by gift) because the husband had given his interest to the wife during the marriage and title was in the wife's name alone. We held, however, that the property was marital property, subject to distribution under § 16–910(b), since the parties had acquired the house during the marriage as tenants by the entirety, and there could not have been a reasonable expectation that the transfer to the wife during the marriage would eliminate the husband's interest. We premised this result on our conclusion that the only plausible basis for § 16–910(a), exempting a spouse's "sole and separate" property from apportionment under § 16–910(b), was that the other spouse would have "little basis for an objectively reasonable expectation of an interest in that property." *Hemily, supra* at 1142–43. Thus, although Mr. Hemily might not have had a reasonable expectation of an interest in his wife's property if acquired before the marriage, or received during the marriage from a third party by gift, bequest, devise or descent, see § 16–910(a), we concluded that neither Mr. Hemily nor his wife reasonably would have expected that his own "purported gift of sole ownership" to his wife during the marriage would cut off any claim he

the house to be Mrs. Brice's home, but that it was his investment. The trial court expressly found Mr. Brice more credible than Mrs. Brice. The fact that Mr. Brice wanted his wife to use and enjoy the property during their marriage does not establish an intent to give her a legally enforceable interest in the house.

4. D.C.Code 1978 Supp., § 16–910, provides:

Upon the entry of a final decree of annulment or divorce in the absence of a valid ante-nuptial or post-nuptial agreement or a decree of legal separation disposing the property of the spouses, the court shall:

(a) assign to each party his or her sole and separate property acquired prior to the marriage, and his or her sole and separate property acquired during the marriage by gift, bequest, devise or descent, and any increase thereof, or property acquired in exchange therefor; and

(b) distribute all other property accumulated during the marriage, regardless of whether title is held individually or by the parties in a form of joint tenancy or tenancy by the entireties, in a manner that is equitable, just and reasonable, after considering all relevant factors including, but not limited to: the duration of the marriage, any prior marriage of either party, the age, health, occupation, amount and sources of income, vocational skills, employability, assets, debts, and needs of each of the parties, provisions for the custody of minor children, whether the distribution is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of assets and income. The court shall also consider each party's contribution to the acquisition, preservation, appreciation, dissipation or depreciation in value of the assets subject to distribution under this subsection, and each party's contribution as a homemaker or to the family unit.

might have to the property upon dissolution of the marriage. *Hemily, supra* at 1143.[5]

In holding that property once owned by the entirety could not be transformed, under the circumstances, into § 16–910(a) property by gift between spouses during the marriage, we specifically reserved in *Hemily, supra* at 1143 n. 3, the converse question, which is presented in this case: "whether property which originally was acquired by a spouse in one of the ways enumerated in § 16–910(a) could ever, under the particular circumstances of a given marriage, come to be considered property subject to distribution under § 16–910(b)."

■ Before enactment of the 1977 Marriage and Divorce Act, property owned by one spouse could be distributed to the other upon dissolution of the marriage only if "some right or element of ownership, legal or equitable," could be found in the spouse who did not hold title. *Wheeler v. Wheeler,* 88 U.S.App.D.C. 193, 195, 188 F.2d 31, 33 (1951). *Accord, Lyons v. Lyons,* D.C.App., 295 A.2d 903, 904–05 (1972) (wife had equitable interest in husband's savings account because of her substantial deposits); *Hunt v. Hunt,* D.C.App., 208 A.2d 731, 733 (1965) (wife had equitable one-half interest in real property jointly held with husband at one time, conveyed to the husband's mother without consideration, and subsequently bequeathed to the husband alone). The language of the new Act does not indicate an intent to abolish or restrict this long-standing approach to "sole and separate" property of a spouse, vesting the trial court with broad discretion in making such determinations. *See* § 16–910(a).

Mrs. Brice argues that even though Mr. Brice purchased the home before the marriage and held title in his name alone, her efforts in maintaining the home, including yard work and painting, coupled with her purchases of virtually all the furnishings, food, and clothing for the family, manifest an antenuptial agreement creating an equitable interest in the home. She concedes that her husband paid the down payment, closing costs, and monthly payments on the marital home, but she argues that her substantial contributions to the household budget created an equitable interest in her because they enabled her husband to cover the home payments. Thus, she says, the trial court abused its discretion in awarding the house to her husband.

■ We agree that a valid antenuptial agreement can create an interest in a spouse who does not hold title. D.C.Code 1978 Supp., § 16–910; note 4 *supra*. Moreover, even in the absence of an antenuptial agreement, we assume for the sake of argument (but do not decide) that disproportionately high payments for home maintenance and household expenses by one spouse may create an equitable interest in real property acquired prior to the marriage and held in the name of the other spouse. Here, however, Mrs. Brice has not established such an interest, premised on her assertion that she had agreed to pay virtually all the family's food, clothing, furniture, and phone expenses, and most of the household upkeep.[6]

Mr. Brice produced cancelled checks and receipts indicating that he had paid the utility bills and much of the cost of improving and maintaining the property, including the cost of work on the air conditioning and heating system, installation of a fence, and purchase of a bathtub and cabinets for the bathroom. He also made payments on

---

5. *Hemily* did not address circumstances in which one spouse unmistakably intended to make an irrevocable gift of property to the other spouse during the marriage.

6. . We construe Mrs. Brice's alleged "understanding" or "agreement" with Mr. Brice to be that she would provide most if not all the specified household items as consideration for an interest in the realty. *See* note 2 *supra*. Mr. Brice denied such an agreement, and the trial court made no finding with respect to it.

Nonetheless, we can evaluate Mrs. Brice's claim by assuming that whether there was an agreement or not, by her own premise—which we accept for the sake of argument—Mrs. Brice is entitled to an equitable interest in the property only if she proves that she made a disproportionately high contribution to the family's food, clothing, furniture, phone expense, and household upkeep as an offset to her husband's payment of all the bills for the house itself.

charge accounts for family clothing purchases and for schooling for the couple's son, Anthony. Mr. Brice further testified that he cashed checks at a Safeway store, his place of employment, for family food purchases.

The trial court credited this testimony, concluding that "most" of Mrs. Brice's alleged expenditures "on the house" were "minimal" and that she contributed no more than "equally for groceries and clothing" (Finding 17). More specifically, according to the court:

> [Mr. Brice] testified that he paid for all important necessities for the home, and much of his testimony is supported by cancelled checks and receipts. [Mrs. Brice] was required by reason of having three of her children living there to make reasonable expenditures for house care and maintenance and to minimize wear on the house. There were no major expenditures by [Mrs. Brice] for the house. She and her children were enjoying the house during all of this time. [Mrs. Brice]'s creditability was greatly weakened by the convincing corroboration furnished by [Mr. Brice] and his demeanor on the witness stand. The Court finds that she has not shown a right to be declared a co-owner of an interest in the property. They spent equally for groceries and clothing. [Finding 17.]

This conclusion is supported by the evidence, D.C.Code 1973, § 17–305(a), and negates Mrs. Brice's claim that she paid virtually all the household expenses.[7] While it is true that Mrs. Brice made substantial furniture purchases during the marriage, those purchases coupled with her other payments for home and family, were not enough to establish an interest in the real estate.[8] In summary, Mrs. Brice has proved neither an antenuptial agreement nor an equitable basis for establishing an interest in the house sufficient to remove it, as a matter of law, from the § 16–910(a) category of "sole and separate" property of her husband.

### III.

Mrs. Brice also challenges the trial court's award of $150 per month in child support for Anthony. She requested $450 per month and contends that the trial court made inadequate findings concerning Anthony's financial requirements and Mr. Brice's ability to contribute to his support. Specifically, Mrs. Brice alleges several deficiencies in Mr. Brice's financial statement: that it fails to reflect his interest in the Montana Avenue property and his ownership of a 1978 automobile;[9] that his credit union debts are listed both as a monthly expense and as a liability; and that part of his payroll deductions are used for the purchase of Safeway stock, which is not listed as an asset.

■ Trial judges have broad discretion in determining the amount of alimony and child support payments. That determination will not be disturbed on appeal unless the court clearly abused its discretion. *Moore v. Moore*, D.C.App., 391 A.2d 762, 770 (1978); *Roberson v. Roberson*, D.C.App., 297 A.2d 769, 771 (1972). We have held on several occasions, however, that "it is essential that in exercising such discretion the trial court first determine the net income (or a reasonable approximation of such) from which a portion is to be set aside for alimony and support payments, as these items are recurring expenditures." *Mum-*

---

7. As indicated in Part I *supra* and at note 6 *supra*, the trial court did not make findings with respect to the alleged antenuptial agreement. It is manifest from the findings the court did make, however, that it perceived no such agreement and, in any event, that Mrs. Brice did not fulfill the terms of the alleged agreement, since she made "no major expenditures for the house" and she and Mr. Brice "spent equally for groceries and clothing." Accordingly, we can affirm the trial court's ruling in the absence of an explicit finding on the alleged agreement as such. *See Ibn-Tamas v. United States*, D.C.App., 407 A.2d 626 at 635–636 (1979).

8. The furniture and personal items were to be returned to Mrs. Brice pursuant to the judgment of the trial court.

9. We note that Mr. Brice's financial statement was corrected to reflect ownership of the automobile.

*ma v. Mumma*, D.C.App., 280 A.2d 73, 76 (1971). *Accord, Grasty v. Grasty*, D.C.App., 302 A.2d 218, 220 (1973) (net income must be determined, although not with an accountant's accuracy).

The trial court here made no finding as to the net income of either spouse; it stated only that Mr. Brice "is able to provide support and maintenance for his minor child" (Finding 12) and that "both [parents are] earning substantial income" (Finding 18). On this record, we have no way of knowing the basis for this conclusion regarding the parties' incomes or whether the trial court found Mr. Brice's financial statement credible. *See Grasty, supra* at 220. Moreover, no trial court finding specifically addresses the issue of the needs of the child. *See Moore, supra* at 771 (citing cases). We therefore must remand for appropriate findings on Anthony's needs and the respective abilities of the parties to contribute to his support.

### IV.

We affirm the trial court's judgment that the home at 1517 Montana Avenue, N. E. shall remain the property of Thomas Brice. We remand the case for further proceedings on the child support issue.

*So ordered.*