Macy M. DARLING, Appellant,

v.

Monica M. DARLING, Appellee.

No. 80–424.

District of Columbia Court of Appeals.

Argued April 2, 1981.

Decided March 25, 1982.

---

Hal Witt, Washington, D. C., for appellant.

Peter R. Sherman, Washington, D. C., for appellee.

Before HARRIS,[1] MACK and FERREN, Associate Judges.

MACK, Associate Judge:

Appellant (Mr. Darling) appeals from a final divorce decree which, *inter alia*, determined the distribution of various items of property pursuant to D.C.Code 1978 Supp., § 16–910. We affirm the order of the trial court.

I.

The Darlings met in 1967, were married in 1970 and remained together until January 1979.

In 1964 Mr. Darling, using funds loaned by his family, opened a business which specialized in interior design and furnishings called "The Added Touch." The business operated as a sole proprietorship until its

---

1. Associate Judge Harris was a member of the division at the time of argument but did not participate in this decision. He retired effective February 5, 1982.

incorporation in 1978. Appellee (Mrs. Darling) began part-time work at the business in April 1968. By August 1968 she was working full-time at The Added Touch and continued to do so for the next seven years. During this time Mrs. Darling performed a variety of substantial duties for the business. In 1975 she obtained a realtor's license and began to work for a local realtor; however, she continued to work for her husband on a part-time basis in the antiques business.

During the marriage Mr. Darling paid the couple's daily living expenses and Mrs. Darling maintained their home. Mrs. Darling never received any pay for her work at The Added Touch. She did, however, deposit realtor's commissions into her own individual bank account beginning in 1975. In 1978 she loaned virtually all that she had saved, $16,000, to her husband for business expenses.

On February 13, 1978 Mr. Darling incorporated his business under the name "M. Darling, Ltd." and transferred the inventory of The Added Touch to the new corporation. Mr. Darling became the sole stockholder in this corporation. Mrs. Darling served as secretary of the corporation until her removal in December 1978.

In January 1979 Mr. Darling moved from the apartment he shared with his wife, leaving behind various items of property which consisted primarily of antique furniture. He continued to pay rent on the apartment and at least partially to support Mrs. Darling until May 1979. Mrs. Darling left the apartment in July 1979, taking with her the antique furniture and other items of property.

Following a trial, the court issued a detailed set of findings and an order which granted Mr. Darling's divorce petition and divided the couple's property pursuant to D.C.Code 1978 Supp., § 16–910. Mrs. Darling received an undivided 25% interest in M. Darling, Ltd. and $5,000 to compensate her for attorneys' fees incurred in connection with the divorce litigation. The court divided the antiques and other property among the husband, wife and corporation

and denied both parties alimony. Mr. Darling appeals from this order.

We find no merit in the husband's contentions that several of the trial court's findings of fact were clearly erroneous and find the conclusions of law adequately supported by these findings. We do, however, find it necessary to address several other arguments made by appellant.

## II.

■ Appellant seeks reversal on the ground that the trial court erred in failing to rule on a motion that sought to compel his former wife to answer certain questions she had refused to answer on oral deposition. We decline to entertain this claim. The record reflects that following oral argument on this motion the trial court stated that it would take the matter under advisement and rule at some later time. Although the court did fail to rule finally on the motion, appellant neglected to request such a ruling at any time after argument before the court. "Where a ruling on a motion or objection is reserved by the court, movant or the party objecting must subsequently obtain a direct decision or ruling in order to preserve the motion or objection for appellate review." 4 C.J.S. *Appeal and Error* § 322 (1957) (footnote omitted). "[A] motion which, so far as appears from the record, was never decided or ruled on below presents no question for decision in the appellate court." *Id.* § 321e (footnote omitted).

## III.

Twelve days after trial, while the case was under advisement with the court, the husband filed a motion requesting that the court conduct an *in camera* inspection of certain documents. The trial court denied this motion in its order, and the husband now argues that the denial was error which requires reversal.

At trial the husband introduced inventory lists to establish that certain items were corporate, not personal property and therefore not subject to distribution by the court

in its order. He claims that the documents in question were highly relevant to the court's determination of property ownership because they would have corroborated the authenticity of the inventory lists. Because the wife first challenged the authenticity of the inventories in closing argument, he contends, it was error to refuse to reopen the record to inspect these documents.

 We may reverse this aspect of the trial court's order only upon a showing of an abuse of discretion. *See Wentworth v. Air Line Pilots Association*, D.C.App., 336 A.2d 542 (1975); *Edgar v. Thayer*, D.C.App., 155 A.2d 251 (1959). The record before us reflects that the husband had ample opportunity to introduce these documents in the course of a four-day trial. The record also reflects that the wife challenged the authenticity of at least one inventory list at the time it was offered as evidence. Furthermore, the documentary evidence proffered would have conclusively established neither ownership nor distributability of the property at issue since the court found that under the circumstances of this case the use of business funds to purchase property was not dispositive on the question of ownership and instead considered all the circumstances, including manner of acquisition and use by the parties. Accordingly, we find no abuse of discretion and affirm this aspect of the trial court's order.

### IV.

The husband also challenges the award of $5,000 in counsel fees to his former wife on the ground that the award is not supported by specific findings of fact and therefore improper under D.C.Code 1978 Supp., § 16–911(a)(1). We affirm this award.

 D.C.Code 1978 Supp., § 16–911(a)(1) provides in relevant part that a court *may* "require the husband or wife to pay ... suit money, including counsel fees, to enable such other spouse to conduct the case...." Because of the discretionary nature of such an award

it would require an extremely strong showing to convince this court that an award is so arbitrary as to constitute an abuse of discretion. Certainly the trial court is not bound by any mathematical computation of time consumed multiplied by some hourly rate. Consideration should be given to many factors, including the quality and nature of the services performed, the necessity for such services, the results obtained from the services, and the husband's ability to pay. [*Ritz v. Ritz*, D.C.App., 197 A.2d 155, 156–57 (1964) (construing D.C.Code 1961, § 16–410, predecessor statute to D.C. Code 1978 Supp., § 16–910).]

*Accord, Turpin v. Turpin*, D.C.App., 403 A.2d 1144, 1147 (1979). Despite the absence of specific findings of fact in direct support of this award, we find no abuse of discretion here as the record and findings of fact supply an ample basis for the fee award. *See Lyons v. Lyons*, D.C.App., 295 A.2d 903 (1972) (despite lack of specific findings concerning the husband's ability to pay a fee award and the exact value of counsel's services, trial court did not abuse its discretion in awarding counsel fees to wife based on record as a whole); *Woodson v. Woodson*, D.C.App., 256 A.2d 410 (1969) (trial court did not abuse discretion in awarding counsel fees to wife despite parity of husband's and wife's salaries); *Ritz, supra.*

### V.

The husband seeks reversal of the property awards ordered by the trial court on the ground that in awarding a 25% undivided interest in M. Darling Ltd. and full title to specified items of property, principally antiques, to his former wife the court exceeded its authority under D.C.Code 1978 Supp., § 16–910. We reject this contention.

 D.C.Code 1978 Supp., § 16–910(a) requires a court, upon entering a final divorce decree, to "assign to each party his or her sole and separate property acquired prior to the marriage ... or property acquired in exchange therefor...." The court may exercise broad discretion in distributing all *other* property accumulated during the marriage, without regard to title, in an equitable, just and reasonable manner. *Id.* § 16–910(b).

In *Brice v. Brice*, D.C.App., 411 A.2d 340 (1980) we held that under appropriate circumstances property originally acquired by one spouse in one of the ways described in § 16–910(a) could become subject to distribution under § 16–910(b).

Before enactment of the 1977 Marriage and Divorce Act, property owned by one spouse could be distributed to the other upon dissolution of the marriage only if "some right or element of ownership, legal or equitable," could be found in the spouse who did not hold title. *Wheeler v. Wheeler*, 88 U.S.App.D.C. 193, 195, 188 F.2d 31, 33 (1951). The language of the new Act does not indicate an intent to abolish or restrict this long-standing approach to "sole and separate" property of a spouse, vesting the trial court with broad discretion in making such determinations. [*Brice, supra* at 343 (citations omitted).]

The *Brice* court reviewed the claim of a wife to an interest in a house titled solely in her husband. Although the court found the wife's contributions insufficient to sustain a finding that she possessed an equitable interest in the house, it did suggest that disproportionately high home maintenance payments could create such an interest.

In the instant case the husband argues that the trial court improperly characterized the M. Darling, Ltd. stock and the antiques as § 16–910(b) property because they were acquired in exchange for property he owned before the marriage and therefore constitute § 16–910(a) property not subject to the court's equitable powers under subsection (b). In the alternative he argues that the antiques were corporate, not personal, property and therefore improperly distributed because § 16–910 gives the court no authority to distribute the property of third parties to the parties to a divorce action.

▪ We review first the award of stock. The trial court found that the stock of M. Darling Ltd. was an asset acquired during the parties' marriage, not an asset acquired in exchange for property which the husband owned before the marriage despite the fact that The Added Touch was the sole proprietorship of the husband when the couple married.

The Court finds that the business did not operate primarily as an antiques dealership until sometime after the marriage of the parties. "The Added Touch" antiques business represented the culmination of extensive efforts by both [husband] and [wife] and constituted an asset which came into existence during their marriage. Accordingly, the issuance of stock in M. Darling, Ltd. was not made "in exchange for" the sole and separate property of [the husband]; rather, said stock was issued in exchange for assets accumulated by the parties *during* the marriage.

▪ We affirm the court's award of a 25% undivided interest in M. Darling, Ltd. to the wife. Her contributions were not only instrumental in transforming the business from a furnishings and interior design enterprise to an antiques dealership; they also changed the business from an asset which began as the sole and separate property of her husband to one in which both parties possessed valid interests. The business thus became, through her efforts in the course of the marriage, an asset subject to distribution by the court under § 16–910(b). Incorporation of the business and titling of all stock in the husband's name did not affect this. *See Lyons v. Lyons, supra* (wife's substantial periodic contributions to husband's bank account vested her with equitable interest therein to the extent of her contributions although account was titled solely in husband); *Hunt v. Hunt*, D.C.App., 208 A.2d 731 (1965) (where husband and wife owned property jointly and transferred it to husband's mother for no consideration, wife's equitable interest survived).

▪ We also find that the wife's substantial contributions operated to create in her an equitable interest in the business which also survived the incorporation. The trial court's findings detail Mrs. Darling's substantial and extensive contributions to the business, all without pay. In the course of

her association with The Added Touch the wife assisted her husband in remodeling and redecorating the store, compiled and maintained a mailing list, supervised the business when her husband was away on buying trips, and performed various administrative duties. She also assisted her husband in preparing for and participating in national antiques shows. We find that these endeavors were sufficient to create in her an equitable interest in the business and to convert what may otherwise have been § 16–910(a) property to an asset subject to distribution under subsection (b). *See Brice v. Brice, supra. Compare Hunt v. Hunt, supra* (amount of wife's financial contributions toward purchase price of asset is one factor, but not dispositive factor, to consider in apportioning property where wife has an equitable or legal interest in property titled solely in husband) *with Brice v. Brice, supra* (wife's minimal expenditures on house and equal contribution toward grocery and clothing expenses held insufficient to create equitable interest in house which was husband's separately acquired property under § 16–910(a)) *and Mumma v. Mumma,* D.C.App., 280 A.2d 73 (1971) (wife's performance of sporadic clerical services for husband for indeterminate period of time held insufficient to create equitable interest in realty titled solely in his name). Accordingly, we find that the trial court properly distributed the stock of M. Darling, Ltd. pursuant to § 16–910.

■ Turning to the husband's challenge to the court's distribution of the antiques, we find no merit in his arguments that these were § 16–910(a) assets or, in the alternative, that they were corporate assets. The trial court found that business and personal assets were commingled extensively and therefore that the use of business funds to purchase property was not dispositive of the issue of ownership. Rather, the court "examine[d] the underlying substance of the transactions and the circumstances surrounding the acquisition and later use of the antique items in determining their nature and disposition." For example, the court noted that the parties used the antiques in question in their home for lengthy periods and owned little other furniture. Based upon its examination of the circumstances the court apportioned the antiques among the husband, wife and corporation.

In the context of these circumstances we find that the trial court properly characterized a portion of the antiques as personal, not corporate, property. Considering the commingling of business and personal finances and the fact that many of the antiques were purchased with funds earned through the parties' joint efforts, it was proper to distribute the items pursuant to § 16–910(b). We find no merit in the husband's argument that the antiques constitute property acquired in exchange for property he owned before the marriage. The connection, if any, between this property and any the husband owned before the marriage is tenuous at best, and "[t]here is no room under subsection (a) for . . . tracing funds." *Turpin v. Turpin, supra* at 1147 (considering totality of circumstances, bond titled in both spouses' names purchased with funds from sale of house which husband owned before marriage was distributable under subsection (b)).

*Affirmed.*