**Mary F. EALEY, Appellant,**

v.

**Charles F. EALEY, Appellee.**

**No. 90–401.**

District of Columbia Court of Appeals.

Submitted June 3, 1991.

Decided Aug. 14, 1991.

**44**

Terry Lynn Sneider, was on the brief, for appellant.

Dorothy Simpson Dickerson, was on the brief, for appellee.

Before ROGERS, Chief Judge, and STEADMAN, and FARRELL, Associate Judges.

ROGERS, Chief Judge:

Appellant Mary F. Ealey (the wife) appeals from a judgment of absolute divorce to appellee Charles F. Ealey (the husband) on the grounds that the trial judge abused his discretion by failing to award her permanent alimony and by denying her an equitable interest in the marital home based on her homemaker services for twenty-three years. Because the trial judge's findings and conclusions, and orders, do not explicitly address the wife's request for alimony, a potentially important issue for the wife, we must remand for express consideration of her request. With regard to the wife's claim to an equitable interest in the marital home, we find no abuse of discretion.

I.

The parties were married in the District of Columbia on January 25, 1965, and separated on May 12, 1988. There are no children from the marriage, although from prior marriages the wife has a son and the husband has three children. Upon their marriage the wife moved into the husband's home at 525 Roxborough Place, N.W. which he had purchased in 1958. The husband had made a minimum down payment on the house and signed a first and second trust prior to the marriage. During the marriage the husband paid approximately $15,000 to pay off the trusts and taxes. The $15,000 came from various investment accounts that the husband had opened prior to the marriage.[1]

The husband, age 72, retired from the General Services Administration in 1982. His sources of income include a pension of $900 a month, social security benefits of almost $400 a month, and income from investment accounts totalling $84,000. He also has a life interest in the marital home and was living rent free with one of his children.[2]

The wife, age 51, was working at the time of the marriage as a nurse's aide. She stopped working full time a year or two thereafter when she was involved in an automobile accident, and she is unable to do full time work.[3] Since then she has done occasional babysitting and has gener-

---

1. Before the marriage the husband had invested $50,000 in these accounts. The trial judge found that the accounts generated $50,000 in income during the marriage.

2. In 1987, the husband transferred all except a life estate in the marital home to his children by his former wife. The trial judge found that because of deteriorating relations between the parties, the husband moved out of the marital home to live with his eldest son. The judge further found that the marital home, now free of debt, has an assessed value of "about $75,000."

3. The trial judge did not credit the wife's testimony that she had stopped working at her husband's request after she had recovered from the accident. The judge found her claim unbelievable in view of the husband's frugal lifestyle.

ated little income. Some of the babysitting money she used to purchase household items, such as linens, lampshades and curtains; the remainder she placed into a savings account, which at the time of the parties' divorce amounted to $2,200. At some point during the marriage, after the husband and the wife had begun drinking together, the wife developed a serious drinking problem; the husband was forced to stop drinking due to a diabetic condition. The wife also has a degenerative eye condition and a possible heart condition.

On September 30, 1988, the wife filed for support and maintenance, requesting pendente lite relief. A support order was entered on October 18, 1988, for $500. The husband answered, counterclaimed for a legal separation, and filed a supplemental complaint for absolute divorce. The wife answered and filed a counterclaim for a limited divorce on the grounds of desertion and cruelty. In her memorandum of points and authorities, filed June 16, 1989, she sought $750 in monthly support, of which she wanted $425 to come from the husband's pension benefits. She also sought an equitable share in the marital home equal to 50 percent of the appreciated value of the home during the marriage as well as 50 percent of all marital property. In support of her equitable claim, she relied on her 23 years of housekeeping, maintenance, and upkeep of the marital home, citing *Yeldell v. Yeldell*, 551 A.2d 832 (D.C.1988). She also requested that the court assign a monetary value to the value of her lien.[4]

Concluding that the wife was "less well situated financially" than the husband, the trial judge awarded the wife (1) a 50 percent interest in the portion of the husband's pension that was marital property, equivalent to a 34 percent interest in the entire pension; (2) a one-third interest in the investment income of $50,000, or $16,-

667, generated over the course of the marriage, concluding that the wife was not entitled to a one-half interest since, unlike her contributions to the pension, she had made no contributions; (3) her savings account of $2,200; and (4) maintenance of her health insurance premiums by the husband and designation of her as the beneficiary of the husband's annuity under the U.S. Civil Service Retirement System, in accordance with the Civil Service Retirement Spouse Equity Act of 1984, Pub.L. No. 98–615, 98 Stat. 3195 (1984) (codified at 5 U.S.C. § 8331 (1988)). This left the husband with 100 percent of the marital home, including its furnishings, 66 percent of his pension, social security of almost $400 a month, and two-thirds of the present value of his investment accounts. The judge denied the wife's requests for $2,000 for new furniture, for payment of her attorney's fees by the husband, and the judge did not specifically address alimony for the wife nor the wife's request to be designated as the sole beneficiary on the husband's life insurance policy.

The judge also denied the wife any interest in the marital home on the ground that the wife's non-monetary contributions to the maintenance of the home were "quite modest" and not substantial enough either to transform the house from the sole and separate property of the husband under D.C.Code § 16–910(a), to marital property under D.C.Code § 16–910(b), or to entitle the wife to an equitable interest in the house under § 16–910(a). With respect to the wife's contributions towards the marital home, the trial judge found that:

> [the wife] made quite modest contributions toward the maintenance and improvement of the Roxborough house. She and her son Steven painted some of the rooms, and she planted some of the flowers and a rose bush, I believe, in the

---

4. In her points and authorities, the wife requested that the court place a valuation on her equitable interest in the home by computing two sums: (1) the value of her interest at the time of the marriage, which she claimed was $17,000, the median value of the home in 1965, and (2) the value of the equity in the property acquired by both spouses during the marriage, or $93,000

based on the present worth of the house of $110,000. The latter figure is to be subdivided into the wife's and husband's shares. The wife offered this analysis as the means to value the contributions of each party during the marriage. The trial court retained discretion, according to the wife, to award the ceiling amount or reduce it.

yard. Major repairs for the house, however, a new roof at one point and a back porch, were paid for by [the husband]. * * * [The wife] also did some work during the marriage as a homemaker. She did some grocery shopping, some cooking, did the laundry from time to time, did a certain amount of house cleaning. As the years went by, she seemed to do less and less of this, partly because she has a serious drinking problem and was intoxicated a good deal of the time. And when she became intoxicated, she did not perform these chores very well and she also became somewhat belligerent.

The judge also found that the wife made no financial contribution to the home, such as paying the mortgage or property taxes. He found that the $15,000 withdrawn from the husband's investment accounts during the course of the marriage to pay off the trusts and taxes did not come from the wife's one-third share in the income from these accounts, but from the $50,000 that the husband had invested in the accounts prior to the parties' marriage. In the absence of either substantial maintenance or monetary contributions, the judge concluded that the wife was not entitled to an equitable or legal interest in the home.

The wife filed a motion to modify the judgment of absolute divorce on the grounds that the monetary awards would not prevent the wife from becoming a public charge within months; the motion stated that the judge's order would leave the wife with only $13,121.67 for her future use. An accompanying proposed order sought payment by the husband of one-half of the wife's attorney's fees and monthly alimony of $150.00. The judge denied the motion, stating that "the grounds asserted were all considered at the time the Court entered judgment."

## II.

On appeal the wife contends that the trial judge abused his discretion when he failed to award her alimony pursuant to D.C.Code §§ 16–912, –913 (1989), claiming that otherwise she will become a public charge. The husband responds that alimony was not raised in the wife's initial complaint and that the trial judge was not on notice that this was an issue in the case, and hence the wife is barred from raising this issue on appeal.

 A trial judge must make findings of fact and conclusions of law with respect to every material issue that is raised; otherwise meaningful appellate review cannot occur and this court must remand the case or the record. *King v. King,* 579 A.2d 659, 666 (D.C.1990); *Smith v. Smith,* 344 A.2d 221, 223 (D.C.1975); *Mitchell v. Mitchell,* 310 A.2d 837, 842 (D.C.1973); Super.Ct.Dom.Rel.R. 52. Of course, the litigants, through their pleadings, must bring to the trial judge's attention the relief that is requested. *See, e.g., Scott v. District of Columbia,* 493 A.2d 319, 323 (D.C.1985) (trial court and opposing party not on notice of negligence claim where complaint was captioned as including false imprisonment, false arrest and negligence claims, but complaint only contained specific allegations regarding the first two claims) *Georgetown College v. Diavatis,* 470 A.2d 1248, 1251 (D.C.1983); Super.Ct.Dom.Rel.R. 8, 15.

 In the instant case the wife made her request for a separate award of alimony clear in the record. The litigation began when the wife filed a complaint for support and maintenance. Thus, the issue of adequate support, including alimony, was present from the inception. Thereafter supplemental complaints and counterclaims were filed. But the wife did not abandon her request for alimony. Her pretrial statement of June 12, 1989, recited that she "seeks alimony of at least $750 per month," and in her memorandum of points and authorities and addendum she requested $770 per month as alimony. Furthermore, she attached to her motion to modify the judgment of divorce a proposed order designating alimony in the amount of $150.00 per month. That the wife's answer and counterclaim for absolute divorce did not specifically request alimony does not mean that the issue was not raised since her other pleadings were sufficient to put the trial judge and the husband on notice

that the wife was requesting alimony. *See King v. King, supra,* 579 A.2d at 664 (purpose of pretrial conference). Moreover, the husband's counterclaim to the complaint for legal separation specifically sought that he not be required to pay alimony to the wife.

■ An award of alimony would entitle the wife to seek a modification in the amount of alimony in the event that her needs changed. *Tydings v. Tydings,* 349 A.2d 462, 463 (D.C.1975) (substantial and material change in circumstances); D.C.Code § 16–914 (1989). Given the wife's age, health, and financial status after the divorce, the request for alimony is obviously significant to her. Since the trial judge did not expressly address the wife's request for alimony in either his oral or written findings of fact and conclusions of law nor in denying her motion for modification, we remand the case to the trial court to address her alimony request. *Tydings, supra,* 349 A.2d at 666.[5]

### III.

The wife also contends that the trial judge abused his discretion by denying her an equitable interest in the marital home. She maintains that her "sweat equity" homemaker contributions in the form of cleaning, cooking, daily chores, and home maintenance and repair were substantial enough to entitle her to an equitable lien in the home, and hence, the trial judge's finding that she made only "quite modest contributions" towards the preservation of the house by her homemaker services for twenty-three years was clearly erroneous. Further, she maintains that the judge erred by failing to assign an economic value to her homemaker services.

Under the 1977 District of Columbia Marriage and Divorce Act, the trial judge must classify the husband's and wife's property as sole and separate property or as marital property. D.C.Code § 16–910 (1989).[6] Property acquired prior to the marriage remains the separate and sole property of the acquiring spouse in the absence of a transfer of title during the marriage. D.C.Code § 16–910(a). *See Yeldell v. Yeldell, supra,* 551 A.2d at 834–835 (adopting an inception of title approach). This is true with respect to real property even if the non-purchasing spouse has contributed marital funds to pay off the mortgage.[7] *Id.* at 834. Marital property, by contrast, is to be distributed equitably among the parties, without regard to which spouse holds title, taking into account a series of statutory factors, including "each

5. The wife's related contention that the trial judge abused his discretion by failing to designate her share in the pension as alimony can also be addressed on the remand.

6. D.C.Code § 16–910 (1989) provides:

Upon the entry of a final decree of annulment or divorce in the absence of a valid antenuptial or post-nuptial agreement or a decree of legal separation disposing the property of the spouses, the court shall:

(a) assign to each party his or her sole and separate property acquired prior to the marriage, and his or her sole and separate property acquired during the marriage by gift, bequest, devise, or descent, and any increase thereof, or property acquired in exchange therefor; and

(b) distribute all other property accumulated during the marriage, regardless of whether title is held individually or by the parties in a form of joint tenancy or tenancy by the entireties, in a manner that is equitable, just and reasonable, after considering all relevant factors including, but not limited to: the duration of the marriage, any prior marriage of

either party, the age, health, occupation, amount and sources of income, vocational skills, employability, assets, debts, and needs of each of the parties, provisions for the custody of minor children, whether the distribution is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of assets and income. The court shall also consider each party's contribution to the acquisition, preservation, appreciation, dissipation or depreciation in value of the assets subject to distribution under this subsection, and each party's contribution as a homemaker or to the family unit.

7. The inception of title approach and the equitable interest theory have been criticized by one commentator. Golden, Equitable Distribution of Property, App. A, at 267–68 (Supp.1990). Most jurisdictions follow a source-of-funds rule. *Id.* 1.07, at 9–10 (1983). Under this approach, "acquisition of property is not arbitrarily fixed on the date that a legal obligation to purchase is created.... [C]haracterization of the property ... depend[s] on the source of contributions as payments are made." *Id.*

party's contribution to the acquisition, preservation, appreciation, dissipation or depreciation in value of the assets subject to distribution under this subsection, and each party's contribution as a homemaker or to the family unit." [8] D.C.Code § 16–910(b).

■ Sole and separate property under D.C.Code § 16–910(a) is, however, subject to being encumbered by an equitable lien in favor of the non-purchasing spouse upon a finding by the trial judge that the non-purchasing spouse has made a substantial contribution to the acquisition (or increase in value) of the property during the marriage. In *Brice v. Brice, supra* note 8, 411 A.2d at 343, the court appeared to recognize that disproportionately high maintenance payments and non-monetary contributions towards the maintenance of the marital home could create an equitable interest in real property.[9] Two years later, the court held in *Darling v. Darling, supra* note 9, 444 A.2d at 24, that the wife's substantial non-monetary contributions in performing tasks associated with her husband's business entitled her to an equitable interest in the husband's business. Then, in *Yeldell v. Yeldell, supra,* the court held that although the trial judge was without authority under D.C.Code § 16–910(b) to assign to the non-purchasing spouse (the husband) a 50 percent legal interest in the sole and separate property acquired prior to the marriage by the wife, the court could, under D.C.Code § 16–910(a), grant the husband an equitable interest in the property as a result of his substantial financial contributions to the acquisition of the property by paying the mortgage during the marriage, albeit with marital funds. 551 A.2d at 835.

To date the court has not expressly held that services by a homemaker in the form of everyday services, or "ordinary marital duties," are a contribution to either the acquisition of the property or its enhancement.[10] Nor need we decide that issue in

---

**8.** The statute does not define "homemaker services," but the court has assumed that such contributions may take many forms, including contributions to the family's food, clothing, furniture, payment of telephone bills, and household upkeep. *See Brice v. Brice,* 411 A.2d 340, 343 n. 6 (D.C.1980) (evaluating the claim on the premise presented, namely, viewing such contributions "as an offset to the husband's payments of all the bills for the house itself"); *see also Campbell v. Campbell,* 353 A.2d 276, 279 (D.C.1976) (contribution to maintenance of household to be taken into account in distribution of jointly owned house); 1 J.P. McCAHEY, VALUATION AND DISTRIBUTION OF MARITAL PROPERTY, 19.05[4][b], at 19–37 (1984) (discussing three common categorizations of homemaker contributions: contributions to child care, contributions which allow the other spouse to enhance his or her education or career, and contributions which result in the loss of the homemaker's own career opportunities); Chastain, Henry & Woodside, *Determination of Property Rights Upon Divorce In South Carolina: An Exploration And Recommendation,* 33 S.C.L.Rev. 227, 269–70 (1981) (nature of marriage relationship may affect definition of homemaker services, contrasting provider-homemaker with marriage partnership relationship).

**9.** In *Brice v. Brice, supra* note 8, the court did not adopt the standard of "disproportionately high" contributions, in contrast with the "substantial contribution" standard in *Yeldell v. Yeldell, supra,* 551 A.2d at 833, and *Darling v. Darling,* 444 A.2d 20, 24 (D.C.1982). Rather, the court simply assumed the standard that was

argued by the appellant in that case, namely that she had made disproportionately high contributions, and concluded that she had failed to prove such contributions. The wife in the instant case claims that the trial judge applied an incorrect standard in relying on the *Brice* standard. However, although the judge referred in his conclusions of law to the *Brice* standard, this was in regard to his conclusion that the wife's contributions were insufficient to transform the husband's separate property into marital property. The wife disclaimed any request for such a transformation, and hence any error was harmless. In determining whether the wife was entitled to an equitable lien in the husband's separate property, the judge applied a "very substantial contributions" standard, and again, in view of the record on appeal, we are satisfied that any error was harmless.

**10.** Courts applying the special equity doctrine have not been uniform in their approach toward "ordinary marital duties." In *Yeldell v. Yeldell, supra,* the court relied on Florida's special equity doctrine in adopting the equitable interest doctrine. 551 A.2d at 835 n. 7.

The Florida courts have taken a narrow view of homemaker services, refusing to recognize "ordinary marital duties" as a contribution for purposes of creating a special equity: *Duncan v. Duncan,* 379 So.2d 949, 952 (Fla.1980) (child rearing), *Arrington v. Arrington,* 150 So.2d 473 (Fla.Dist.Ct.App.), *cert. denied,* 155 So.2d 615 (Fla.1963) (cleaning the marital home and generally taking care of the non-homemaker spouse).

the instant case. The trial judge considered the whole range of homemaker services claimed by the wife, and evaluated the wife's contribution toward the maintenance and improvement of the house as well as her contributions as an everyday homemaker.[11] Since the judge considered all possible homemaker contributions, he cannot be held to have abused his discretion for viewing homemaker contributions too narrowly. *See Powell v. Powell,* 457 A.2d 391, 393 (D.C.1983). Furthermore, since the record on appeal does not include the trial transcript, there is no basis on which to conclude that the trial judge's

finding that the wife's non-monetary contributions were "quite modest" was clearly erroneous.[12] *See Cefaratti v. Cefaratti,* 315 A.2d 142, 145 (D.C.1974); *Cohen v. Cohen,* 240 A.2d 662, 663 (D.C.1968); D.C.Code § 17–305 (D.C.1981). Nor, in view of the state of the record on appeal can the court hold that the trial judge erred as a matter of law in failing to place a monetary value on the wife's homemaker services. *See Yeldell v. Yeldell, supra,* 551 A.2d at 834 (threshold inquiry is whether non-purchasing spouse's contribution was substantial); *Brice v. Brice, supra* note 8, 411 A.2d at 343–44.[13] While it may

By contrast, the South Carolina Supreme Court, which until recently followed Florida's special equity doctrine, recognized a broader range of homemaker activities as contributing to entitlement to an equitable interest. *Baker v. Baker,* 276 S.C. 427, 429–31, 279 S.E.2d 601, 602 (1981) (normal household duties and caring for non-homemaker spouse); *Simmons v. Simmons,* 275 S.C. 41, 43, 267 S.E.2d 427, 428 n. 1 (1980) (child rearing).

Both Florida and South Carolina have recently enacted equitable distribution statutes similar to the D.C. Marriage and Divorce Statute. FLA. STAT. 61.075 (1990); S.C.CODE ANN. 20–7–473 (Law Co-op.1991); *see also* GOLDEN, *supra* note 7, App. A, at 269 (Florida) & 291 (South Carolina).

*See District of Columbia Uniform Marriage and Dissolution Act: Hearings on Bill 1–89 before the Committee on the Judiciary and Criminal Law* (May 6, 1975) (statement of the Chairman of the Council of the District of Columbia, Honorable Arrington Dixon, upon introducing the bill, that under the new act "[p]roperty shall be distributed based upon contributions of each spouse to the property, including value provided as a homemaker [inter alia]"). *See also* Hauserman, *Homemakers and Divorce: Problems of the Invisible Occupation,* 17 Fam.L.Q. 41, 50, 53 (suggesting that "inclusion of homemaker services as a [statutory] factor implied an equitable weighing with the actual dollar contribution of the wage earning spouse"); note 13, *infra,* on valuation theories and problems; *Rothman v. Rothman,* 65 N.J. 219, 227–31, 320 A.2d 496, 501–02 (1974) (marriage as a partnership); *R.E.T. v. A.L.T.,* 410 A.2d 166, 168 (Del.1979) (same); MCCAHEY, *supra* note 8, 19.05[b][4], at 19–37 (same).

**11.** The judge also took into account the wife's homemaker contributions in determining an equitable distribution of the income earned by the husband's investment accounts during the marriage.

**12.** We do not reach the question of whether the trial judge erred in concluding that the wife's $15,000 share of the income from the husband's

investments could not be "double" counted in assessing her equitable interest. *See Yeldell v. Yeldell, supra,* 551 A.2d at 835, where the court recognized that mortgage payments from marital property, i.e., income earned by the husband from employment outside of the home during the marriage, could be used to determine the amount of the non-purchasing spouse's equitable lien in the sole and separate property of the purchasing spouse. The trial judge in the instant case concluded that counting the wife's $15,000 interest as money that was used, even partially, to pay the trusts on the marital home would involve double counting. His concern was that since he had taken equitable factors into account in awarding the wife a one-third interest in the income produced by the husband's investment accounts, allowing that same interest to be the basis for an equitable lien in the marital home would "involve a boot-strapping situation or duplicative situation which would not be equitable." The wife did not raise this issue below in her pleadings, *see Scoggins v. Jude,* 419 A.2d 999, 1002 (D.C.1980) (no plain error), and has not raised this issue on appeal.

**13.** While there may be valuation problems associated with a requirement that a monetary value be placed on homemaker services, that is not the rationale for our conclusion that the trial judge did not err in the instant case. The wife suggested a valuation scheme in her pleadings in the trial court. *See* note 4, *supra. Cf. Yeldell v. Yeldell, supra,* 551 A.2d at 835 (court determines appropriate method of valuation); *Doe v. Binker,* 492 A.2d 857 (D.C.1985) ("mathematical precision" not required in the quantification of the value of future earnings in wrongful death action). *See generally* Hauserman, *supra* note 10, at 52–53 (among suggested theories of valuation are (1) "replacement cost," where the homemaker spouse would introduce evidence regarding the cost of providing services in the home on an hourly basis, and (2) "opportunity cost," where court determines the next best occupation that the homemaker gave up to become a

be that the trial judge should generally place a monetary value on the non-monetary contributions, particularly when requested to do so and a formula is proposed, in the absence of any evidence in the record on appeal to suggest that the wife's contributions were anything other than "quite modest," requiring such a valuation would appear superfluous. Twenty-three years of homemaker services may well entitle a spouse to an equitable interest under some circumstances, but given the state of the record on appeal, there is no basis for the court to hold that the trial judge's failure to place a monetary value on the wife's contributions was error.

Accordingly, we hold that the judge did not abuse his discretion in denying the wife an equitable interest in the marital home.[14]

homemaker, and values the homemaker services according to the market value of this next best occupation). *But see In re Marriage of Schulte*, 546 S.W.2d 41, 47 (Mo.Ct.App.1977) (unnecessary to evaluate dollar value of marital property); *Bidwell v. Bidwell*, 122 A.D.2d 364, 364–66, 504 N.Y.S.2d 327, 329 (1986) (expert evidence not required to value marital property); *In re Briggs' Marriage*, 225 N.W.2d 911, 913 (Iowa 1975) (mathematical precision not required); GOLDEN, *supra* note 7, 8.17, at 263 (no ascertainable formula exists); McCAHEY, *supra* note 8, 19.05[4][b], at 19–39 (difficulties in approaches for evaluating homemaker services); Hauserman, *supra* note 10, at 53 (suggesting valuation scheme based on inclusion of homemaker services as a factor in the equitable distribution statute).

14. The wife's contention that the trial judge abused his discretion when he determined that her homemaker services did not transform the home from sole and separate property under D.C.Code § 16–910(a) to marital property under

D.C.Code 16–910(b), is meritless. As noted, *supra* note 9, the wife expressly disavowed any suggestion in her pleadings in the trial court, and, in any event, insofar as the record on appeal reveals, she did not present evidence on which the trial judge could find that her contributions were substantial enough to accomplish such a transformation. *See Darling v. Darling*, *supra* note 9, 444 A.2d at 24 (character of business originally owned by husband before marriage was changed by wife's efforts during the marriage, thereby making it an asset subject to distribution as marital property under section 16–910(b)).

We also find no abuse of discretion by the judge by granting the wife a one-third interest in the investment accounts set up by the husband. The trial judge took into account all the relevant factors enumerated in D.C.Code § 16–910(b). *Barbour v. Barbour*, 464 A.2d 915, 919–20 (D.C.1983).