**Marion L. HEMILY, Appellant,**

v.

**Philip W. HEMILY, Appellee.**

**No. 13379.**

District of Columbia Court of Appeals.

Submitted Jan. 23, 1979.

Decided June 25, 1979.

Margaret A. Beller, Charlotte B. Hallam, and Carolyn R. Just, Washington, D.C., were on briefs, for appellant.

David Booth Beers and Nancy C. Shea, Washington, D.C., were on brief, for appellee.

Before KERN, HARRIS and FERREN, Associate Judges.

HARRIS, Associate Judge:

This case arises from a divorce proceeding. Appellant-wife contends (1) that the trial court erred in treating certain of appellant's individually-owned property as part of the total marital property which could be distributed by the court under D.C.Code 1978 Supp., § 16–910(b), and (2) that the trial court abused its discretion in the manner in which it distributed the couple's property. We affirm.

### I

In 1958 the Hemilys purchased two virtually identical houses, located at 3120 and 3122 Dumbarton Street, N.W., as tenants by the entirety. The down payments for the houses were made out of joint savings of the parties. Subsequently, however, the husband made all mortgage payments on the properties. In 1967, title to the house at 3120 Dumbarton was transferred to the wife as sole owner. Thereafter, she rented it and received the rental income, and also made all payments for the mortgage, taxes, insurance, and repairs for the property. The husband continued to make all such payments for the house at 3122 Dumbarton Street.

In 1978, the trial court granted the husband an absolute divorce on the ground of voluntary separation for more than one year without cohabitation. It also awarded him sole ownership of the property at 3122 Dumbarton Street. The wife was awarded sole ownership of the 3120 Dumbarton Street house.

### II

Distribution of property in a divorce action now is governed by D.C.Code 1978 Supp., § 16–910, which provides:

Upon the entry of a final decree of annulment or divorce in the absence of a valid ante-nuptial or post-nuptial agreement or a decree of legal separation disposing the property of the spouses, the court shall:

(a) assign to each party his or her sole and separate property acquired prior to the marriage, and his or her sole and separate property acquired during the marriage by gift, bequest, devise, or descent, and any increase thereof, or property acquired in exchange therefor; and

(b) distribute all other property accumulated during the marriage, regardless of whether title is held individually or by the parties in a form of joint tenancy or tenancy by the entireties, in a manner that is equitable, just and reasonable, after considering all relevant factors including, but not limited to: the duration of the marriage, any prior marriage of either party, the age, health, occupation, amount and sources of income, vocational skills, employability, assets, debts, and needs of each of the parties, provisions for the custody of minor children, whether the distribution is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of assets and income. The court shall also consider each party's contribution to the acquisition, preservation, appreciation, dissipation or depreciation in value of the assets subject to distribution under this subsection, and each party's contribution as a homemaker or to the family unit.

Appellant-wife maintains that in apportioning the couple's property, the trial judge distributed both 3120 and 3122 Dumbarton under § 16–910(b). She asserts this

to be error because the house at 3120 Dumbarton was given to her as a gift by the husband and was thereafter individually owned by her; thus, she maintains, the house should have been assigned to her under § 16–910(a) as her "sole and separate property acquired during the marriage by gift." We agree that the trial court allocated 3120 Dumbarton under subsection (b), but we disagree with the contention that such a ruling was improper.

As we indicate today in *Turpin v. Turpin*, D.C.App., 403 A.2d 1144, at 1146, a threshold requirement that must be satisfied in order for property to be exempt under § 16–910(a) from distribution under § 16–910(b) is that it be "the sole and separate property" of one spouse. Unquestionably, the house at 3120 Dumbarton was the wife's sole and separate property. However, that fact is not dispositive here. In this case, we are required to go a step further than we did in *Turpin v. Turpin, supra*, and determine whether the property at issue meets the other requirements of subsection (a). This requires a brief exposition of the law relating to the disposition of property upon divorce as developed prior to the District of Columbia Marriage and Divorce Act of 1977 (D.C. Law 1–107, § 107), which gave us § 16–910 in its present form.

Under the predecessor to the current statute (and its antecedents), only jointly-held property could be distributed by the court.[1] *See, e. g., Turpin v. Turpin, supra,* at 1146. There was no statutory authority to reach individually-owned property. *Id.* This gap in the court's ability to fully settle the property interests of parties to a divorce was filled, however, by invoking the "general equity powers" of the court. Thus, in 1950, when the United States District Court for the District of Columbia was the forum for domestic relations suits, the circuit court stated:

The [trial] court had jurisdiction under its general equity powers to adjudicate and settle a dispute between the parties concerning their respective rights in funds and property which had been acquired by them during marriage, or incident thereto. [*Reilly v. Reilly*, 86 U.S. App.D.C. 345, 182 F.2d 108, *cert. denied*, 340 U.S. 865, 71 S.Ct. 90, 95 L.Ed. 632 (1950) (citations omitted).]

This later was interpreted to mean that the trial court could consider apportioning property which was individually owned by one spouse, but could only award such property upon a showing that the other spouse had a legal or equitable interest therein. *See Wheeler v. Wheeler*, 88 U.S.App.D.C. 193, 194, 188 F.2d 31, 32 (1951).

In 1959, Congress transferred jurisdiction over domestic relations matters to the Municipal Court of the District of Columbia (now the Superior Court), which was a court without general equity powers. The source of the power to adjudicate these property questions thereafter was said to be the specific language of the relevant statute, which is now codified, essentially unchanged, in D.C.Code 1973, § 11–1101, which provides:

The Family Division of the Superior Court shall be assigned . . . exclusive jurisdiction of—

(3) determination and adjudication of property rights, both real and personal, in any action referred to in this section, irrespective of any jurisdictional limitation imposed on the Superior Court . . . .

In *Posnick v. Posnick*, D.C.Mun.App., 160 A.2d 804 (1960), we interpreted the predecessor of that section to mean that the local trial court "has jurisdiction to adjudicate all property disputes between the parties." *Id.*, at 807. Therefore, the Superior Court had the authority to apportion individually-held property. *See Lyons v. Lyons*, D.C.

---

1. D.C.Code 1973, § 16–910, provided:
   Upon the entry of a final decree of annulment or absolute divorce, in the absence of a valid antenuptial or post-nuptial agreement in relation thereto, all property rights of the parties in joint tenancy or tenancy by the entirety shall stand dissolved and, in the same proceeding in which the decree is entered, the court may award the property to the one lawfully entitled thereto or apportion it in such manner as seems equitable, just, and reasonable.

App., 295 A.2d 903, 904–05 & n. 2 (1972). To do so properly under the prior law, however, the court was required to find that the nontitled spouse had a legal or equitable interest in the property. *Id.*, at 905.

Those interests were not readily found by our courts. *See Mumma v. Mumma*, D.C. App., 280 A.2d 73, 76 (1971). Indeed, there are only two cases in which we have determined that one spouse was entitled to share in the other's individually-owned property.[2] Most recently, in *Lyons v. Lyons, supra*, we upheld a finding by the Family Division that a wife had an equitable interest in her husband's bank account in the amount of $7,500. That interest was found to have arisen as a result of the wife's substantial periodic contributions to the account. Accordingly, we held that the trial court was justified in awarding the wife that portion of her husband's property which equitably belonged to her. *Id.*, at 905.

In contrast, in *Hunt v. Hunt*, D.C.App., 208 A.2d 731 (1965), this court sustained the award to a wife of a one-half interest in real property held in her husband's name even though the wife had made no financial contribution to the property. The land in question had been acquired during the marriage and was held jointly by the husband and wife. Subsequently, also during the marriage, the property was transferred without consideration to the husband's mother. Prior to the divorce, however, the mother died, leaving the property to her son as sole owner. Focusing on the fact that at one time the wife had been a joint owner of the property, the trial court ruled that she still maintained her equitable half-interest in it since it was conveyed to the mother without consideration. Therefore, the court found that the wife was entitled to that interest. *Id.*, at 733.

### III

In both *Lyons v. Lyons* and *Hunt v. Hunt, supra*, the court exercised its equitable powers and looked beyond the labels of title, which were controlling under the then-existing statute, in order to distribute property which effectively had not been individually owned during the marriage. In enacting D.C.Code 1978 Supp., § 16–910(b), the legislature sought to facilitate the authority of Superior Court judges to reach equitable results in divorce property dispositions without requiring the court to search for strict legal or equitable ownership interests in the nontitled spouse.

Under the new statutory scheme, regardless of how a certain asset is titled, if it was acquired during the marriage other than by gift, bequest, devise, or descent to one spouse (or by increase thereof or in exchange therefor) it is subject to distribution under subsection (b) whether or not both spouses made actual contributions (financial or otherwise) to the acquisition and maintenance of the property. This fundamental change effected by the new statute simply reflects and supports the reality that when property is so acquired during a marriage, however it is titled, both spouses reasonably may expect to have an interest therein which a court would consider in case of divorce.

In codifying the trial court's power to distribute all such property acquired during a marriage under § 16–910(b), the legislature did expressly exempt from such distribution property acquired otherwise. Such exempted property, as set forth in § 16–910(a), consists of (1) "sole and separate property acquired prior to the marriage," (2) "sole and separate property acquired during the marriage by gift, bequest, devise, or descent," and (3) "any increase in [(1) or (2)]," or (4) "property acquired in exchange [for (1) and (2)]." *See Turpin v. Turpin, supra*, 403 A.2d at 1146. The logic of exempting these categories of property from a trial judge's broad authority to apportion is that when property is acquired by one spouse in one of these ways, there normally would be little basis for an objective-

---

**2.** Arguably there is a third in *McGean v. McGean*, D.C.App., 339 A.2d 384 (1975). In that case we said that a wife was entitled to a share of property owned by her husband, in proportion to the amount of money she had contributed toward the purchase price, but we reversed a finding that she should be awarded one-half of the property.

ly reasonable expectation of an interest in that property on the part of the other spouse.[3]

■ It follows that Mrs. Hemily cannot prevail in her argument that the property at 3120 Dumbarton should have been considered exempt from distribution under & 16–910(b) because it was her "sole and separate property acquired during the marriage by gift." Her position finds superficial support in the literal wording of subsection (a), but runs afoul of the import of the statute as a whole—which is that the court properly should focus on the circumstances under which a property was originally brought into a marriage. In other words, the subsection (a) exemption for "sole and separate property acquired during the marriage by gift, bequest, devise, or descent" is not to be read to exclude from apportionment property which initially had come into the mar-

riage other than by the means enumerated in subsection (a), and which therefore should be distributable under subsection (b).

■ To put it another way, we conclude that "marital property" [property initially acquired in such a way as to be apportionable under subsection (b)], cannot be transformed into "sole and separate property acquired during the marriage by gift . ." for the purposes of assignment under subsection (a) by any subsequent action of a spouse such as the purported gift[4] of sole ownership from one spouse to the other.[5] If the property initially was acquired as "marital property" (as we have defined that term) during the course of the marriage it will remain so for the purposes of § 16–910, notwithstanding any subsequent interchange between the two spouses.[6] Of course, when distributing property under subsection (b), the trial court is always to

3. Our view of the sense of § 16–910 is supported by the *Uniform Marriage and Divorce Act* (1973 version), upon which the new D.C. statute is based. *See* Green & Long, *The Real and Illusory Changes of The 1977 Marriage and Divorce Act*, 27 Cath.U.L.Rev. 469, 470 (1978). Under § 307(c) of the Uniform Act:

All property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership . . . . The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (b).

The subsection referred to is an enumeration—basically paralleling that in our § 16–910(a)—of the narrow classes of property exempted from distribution. The Uniform Act expresses a "presumption" that property coming into a marriage is to be distributed, which is overcome only where the property in question was acquired in one of the enumerated exempted ways. *See* Commissioners' Note to § 307(c).

Holding, as we do, that the house at 3120 Dumbarton properly would not be assignable to Mrs. Hemily under § 16–910(a), we are not called upon to decide whether property which originally was acquired by a spouse in one of the ways enumerated in § 16–910(a) could ever, under the particular circumstances of a given marriage, come to be considered property subject to distribution under § 16–910(b). Also, we note that § 307 of the *Uniform Marriage and Divorce Act* has been amended. *See* 1979 Supp. The new Alternative A of § 307 "proceeds upon the principle that all the property of

the spouses, however acquired, should be regarded as assets of the married couple, available for distribution among them . . . ." *See* Commissioners' Comment to § 307 (1979 Supp.).

4. We do not hold that Mr. Hemily's conveyance of sole title to the house to his wife was a valid gift. We only assume, arguendo, that it was.

5. We are satisfied that the overall scheme of § 16–910 evinces such an intent. The analogous Maryland statute provides a clearer guideline on this subject. That provision includes interspousal gifts within "marital property" by expressly excluding gifts only "from a third party" from such categorization. Md.Code Ann. *Courts and Judicial Proceedings* §§ 3–6A–01(e) *et seq.* (Michie 1978). This is consistent with what must be the result under our statute.

6. Further, even transfers of "marital property" to a third party by one spouse or both spouses might not prevent that property from being subject to distribution under § 16–910(b) were it to come back to one spouse by gift, bequest, devise, or descent. Illustratively, under the new statute, *Hunt v. Hunt, supra,* would likely be decided the same way that it was by equitable principles under the old statute—*i. e.,* the property which initially came into the marriage as "marital property," and subsequently was transferred to the husband's mother without consideration, and which finally was left to the husband alone by bequest (still during the marriage), would appear to remain subject to distribution under § 16–910(b).

exercise its discretion after considering all relevant factors, including each party's contribution to the acquisition and maintenance of each property in question.

In this case the house at 3120 Dumbarton was initially acquired as "marital property"; it was purchased during the marriage and held jointly. Thereafter, Mr. Hemily conveyed his share in the house to Mrs. Hemily, making her the sole title holder. However, this subsequent conveyance from husband to wife, giving Mrs. Hemily sole title to the house, did not alter its status as distributable property for the purposes of the statute.

██ Finally, the trial court's disposition of all the property under subsection (b) was carefully considered, and there is no merit to appellant's contention that the court abused its discretion in distributing it as it did.[7]

*Affirmed.*

---

**7.** We note that the trial judge properly assigned to Mr. Hemily under subsection (a) a parcel of real property in Florida which he had obtained by bequest from his parents.