*In re* MARRIAGE OF GARNET DRENNAN, Petitioner-Appellee and Cross-Appellant, and CHARLES DRENNAN, Respondent-Appellant and Cross-Appellee.

Fourth District    No. 16452

Opinion filed March 2, 1981.

Burt Greaves, of Greaves, Lerner & Gadau, of Champaign, for appellant.

Strock & Kinate, Ltd., of Pontiac (Gordon M. Kinate and Randell S. Morgan, of counsel), for appellee.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

Petitioner, Garnet Drennan, and respondent, Charles Drennan, were married on June 15, 1974. Judgment of dissolution was entered on November 9, 1978, at which time the wife was 34 years of age and the husband 43 years old. Prior to their separation, the parties had been married for three years and nine months.

The central dispute at trial and on appeal is whether the marital residence should be classified as marital or nonmarital property for the purpose of a property division between the parties. The land on which the marital residence was built was purchased in 1963 and the house built in 1968. At the time the house was built, the husband borrowed funds from his parents to build the house and executed a note in their favor. He made no payments to his parents on the note until after his marriage. Shortly after their marriage, the parties executed a mortgage note on the marital residence for $18,000. The proceeds of the note were used to repay the husband's parents for the money previously borrowed to finance the construction of the house. Immediately prior to the property division hearing in this case, in May 1979, the remaining unpaid balance on the mortgage loan was $14,969.76. From this record, it appears that apart from the value of the land purchased separately, the income after marriage to be treated as marital property invested in the house barely exceeded $3,000.

The wife testified that it was explained to her that the note the husband executed in his parents' favor would become due when he remarried. She testified that after the marriage, the parents requested payment of the loan and that the husband told her that they would be required to borrow money and that it would be necessary that she join in the note and mortgage. She admitted on cross-examination that the savings and loan association from which they acquired the mortgage required her to join in the note and mortgage as a prerequisite for obtaining the loan.

The husband testified that he never transferred title to the house to the petitioner and that it remained in his name throughout the marriage. He further testified that he never intended to transfer title or promised the wife that he would transfer title to the property into her name. He ad-

mitted that the mortgage payments were made during the marriage from joint marital funds.

The wife testified that several improvements were made to the property during the marriage. She stated that central air conditioning, new carpeting, new draperies, and redecorating were all purchased for the house during the marriage, using joint funds. She also testified that an addition to the land itself was acquired during the marriage. A 25-foot strip of land was acquired during the marriage by the parties from the husband's mother who sold it to him for $400. None of the wife's statements with regard to improvements to the house or the addition to the land itself were contradicted by the husband. At the time of the hearing on property division, she estimated the value of the house to be between $50,000 and $55,000, while he, in his affidavit, estimated the value of the house to be $40,000.

According to the wife, during the parties' marriage she was employed part-time for 14 months, earning $65 per week. According to the husband, she earned $30 to $35 per week. Subsequent to the parties' separation, she testified that she had become employed as a waitress and that her total monthly income was $725 per month, which sum included $270 per month in child support she received for her two children from prior marriages.

The husband testified that he was presently employed as a parts manager for an automobile dealership where he had worked for the past 13 years. His present gross income, at the time of trial, was $1,360 per month.

The parties owned two cars and some household furniture, but the marital residence and land constituted the greatest asset owned by the parties and virtually the only asset of substantial monetary value.

The trial court determined at the close of the hearing that neither party should receive maintenance. The trial court, with regard to the marital residence, made the following findings:

> "When the respondent and petitioner jointly come up with $18,000.00 to pay off the preexisting debt on the home, they were in essence jointly purchasing the home from the respondent who continued to hold title as trustee for both of them. The home is marital property in which the respondent's prior equity is so commingled as to lose its character as non-marital property. The home is ordered sold and after payment of the remaining mortgage balance and costs of sale the net proceeds are ordered distributed 25% to petitioner and 75% to respondent."

The husband argues that the foregoing determination by the trial court was erroneous as the property, both the house and the land, was "acquired" prior to marriage and therefore should have been character-

ized as nonmarital property. Property acquired before marriage is, by definition, nonmarital property under the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1979, ch. 40, pars. 503(a)(6), (b)). The statute defines marital property only for purposes of division at dissolution and does not prevent separate ownership during the span of marriage.

It appears that the wife concedes that the property was "acquired" before marriage; but asserts, based upon the trial court's determination, that the nonmarital property was transmuted into marital property by the joint execution of the note and mortgage. Thus, we are not presented with the problem of determining when property is "acquired" for the purposes of section 503, as the court was in *In re Marriage of Crouch* (1980), 88 Ill. App. 3d 426, 410 N.E.2d 580, but we may assume that the property was acquired prior to marriage.

The husband notes that the title to the property always remained in his name and asserts that the mere execution of the mortgage note is simply not sufficient evidence of any intent to transfer title or ownership from himself to him and the wife.

The wife counters that title is irrelevant in determining whether the property is marital or nonmarital, citing *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382. In that case, in accordance with the express language of section 503(b) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(b)), the court held that title is irrelevant in determining whether property after marriage is marital or nonmarital. While the title concept is irrelevant with regard to property acquired after marriage, there is no similar provision which applies to property purchased prior to marriage. In this case the property was acquired after marriage, and to determine, at the time of dissolution, whether the property had remained nonmarital, title is a relevant indicator.

The husband's position that the property is nonmarital property is supported by two leading Missouri cases on this subject: *Cain v. Cain* (Mo. App. 1976), 536 S.W. 2d 866, and *Stark v. Stark* (Mo. App. 1976), 539 S.W. 2d 779. Missouri, it should be noted, has a property division statute virtually identical to section 503 of our Act. (Mo. Ann. Stat. §452.330 (Vernon 1977).) In *Cain*, the husband purchased a farm one year prior to the parties' marriage and the vast majority of the payments on the farm mortgage were made during the lengthy marriage of the parties and paid, admittedly, from marital funds. The court determined that the property was nonmarital and concluded that once property acquires the status of separate property, as it did in that case, it does not lose that status solely because marital funds are devoted to the reduction or elimination of an encumbrance on the property. 536 S.W. 2d 866, 871.

In *Stark*, the husband had purchased a farm four years prior to the

parties' marriage and still owed a substantial sum on the farm at the time of the parties' marriage. Title to the farm was taken in the husband's name and was so retained throughout the marriage. After the parties married they moved to the farm and began to build a home. Subsequently, they incurred joint liability on a loan and mortgage and used the money received to discharge all of the husband's old debts, including, presumably, the prior mortgage encumbrance, and in addition used the funds to finance the construction of the new home. The appellate court affirmed the award of the land itself to the husband and, interpreting the Missouri statutory section which is virtually identical to section 503 of our Act, stated:

> "[A]ll property acquired by a spouse prior to the marriage and which remains titled in that spouse after marriage is, in the absence of clear intention to contribute that property to the community or to the other spouse, the separate property of that spouse and will not be regarded as marital property. [Citation.] The character of a separate property is not altered because one spouse joins in a mortgage obligation on the separate property of the other. [Citations.] It is altogether consistent to assume that the $18,000 loan and mortgage, although taken as a joint obligation, issued upon the faith and credit of the separate property which secured the transaction. There is no evidence that the joint mortgage was intended to create a new estate between them and in the absence of such proof, the transaction did not change the separate title of the husband into community property." 539 S.W. 2d 779, 782.

■■ In the case at bar, the wife admitted that she was required to sign the mortgage note in order for her husband to secure the loan. Title was never transferred into joint tenancy; the only evidence of an intent to create a new estate between the parties was testimony by the wife to that effect, and her testimony was contradicted by the husband's testimony as to the same conversations. We agree with the court in *Stark* that the mere execution of a mortgage note is insufficient to constitute a transmutation of nonmarital property into marital property.

■■ The wife additionally argues that the property should be considered marital property because she has remained liable on the mortgage note which was jointly executed by the parties. Clearly, if the trial court had held that the property was nonmarital property, the court could have, and most likely, would have, required the husband to hold the wife harmless on the mortgage note. Further, mere liability on the note itself is insufficient to determine whether the property is marital or nonmarital. Thus, we conclude that the trial court erred in finding the property to be marital property.

We believe we must address a corollary aspect of our holding as the

trial court will be charged with determining on remand, what, if any, compensation should be received by the wife for the marital funds that were expended to reduce the mortgage and pay for improvements to the marital residence.

The Act provides, as a method of compensation, that the "contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property" is a relevant factor which the court must consider in dividing the marital property (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(1)). This method of compensation has been specifically endorsed by the supreme court in *In re Marriage of Komnick* (1981), 84 Ill. 2d 89, 96, in which the court stated:

> "Though the nonmarital property and its appreciated value remain the separate asset of the spouse who received it subsequent to the marriage, a court, relying upon evidentiary, proof, would have to distribute the marital property of the couple in a manner that would reflect the measure of contributions of the spouses."

■■ In the case at bar, however, there is no substantial marital property other than the land and house. On remand, therefore, the court may apply one of several alternative methods of compensation. In *Stark*, the Missouri Appellate Court affirmed a lump sum cash award to the wife, which, in that case, was intended to compensate the wife for her contribution to the house which was built during the marriage. In the case at bar, a lump sum award related to the wife's contribution to the nonmarital assets may be an appropriate alternative and one that we believe is available to the trial court. The court in *Cain* did not need to reach the issue of compensating the wife in an alternative manner because there was sufficient marital property available to compensate the wife, but the court noted that an alternative available might be a charge or lien against the nonmarital property in the amount of the contribution made by the spouse. This method was endorsed recently by the court in *Crouch*.

The wife cross-appealed in the case at bar, arguing that she should have received a greater percentage of the proceeds of the sale of the marital residence and in addition should have received maintenance and attorney's fees. The first contention is disposed of by our decision that the property is nonmarital. The trial court denied maintenance and attorney's fees based on the property settlement which the wife received. As property division is preferred to maintenance in the statutory scheme, this was an appropriate method of proceeding in light of the trial court's determination that the house was marital property. (*In re Marriage of Aschwanden* (1979), 82 Ill. 2d 31, 38, 411 N.E.2d 238, 242.) On remand, the trial court should reconsider these areas as other alternatives for compensating the wife, as without the property settlement, the wife may

neither have sufficient funds to support herself nor to pay her attorney's fees.

One argument made by the wife deserves specific mention. She argues that she should have received an award of temporary maintenance because:

> "Due to the extreme nature of the offenses committed by the husband, not only against the wife as and [*sic*] for grounds of the dissolution, but also against her children as well, the wife was required to immediately remove herself and her children from the marital home upon discovery of such offenses. She was consequently required to incur great expense in establishing a residence for herself and her children, and she did not have the opportunity to remain in the marital home and seek to have the husband removed from same."

While the wife's needs in relocating herself and her ability to support herself are appropriate considerations for the court in determining whether maintenance is appropriate (Ill. Rev. Stat. 1979, ch. 40, par. 504), she has improperly attempted to interject the subject of marital misconduct into her request for maintenance. This is contrary to the express purpose of the new Act, and an award of maintenance based upon marital misconduct would be improper. Ill. Rev. Stat. 1979, ch. 40, par. 102(6).

Judgment reversed and remanded.

CRAVEN and MILLS, JJ., concur.