Evangeline Iverson
**YELDELL, Appellant,**

v.

**David L. YELDELL, Appellee.**

**No. 87–351.**

District of Columbia Court of Appeals.

Submitted July 15, 1988.
Decided Dec. 22, 1988.

George A. Windsor, was on the brief, for appellant.

No brief was filed for appellee. Alphonso W. Pendergrass, Washington, D.C., entered an appearance for appellee.

Before TERRY and SCHWELB, Associate Judges, and PRYOR, Senior Judge.*

TERRY, Associate Judge:

In this divorce appeal, the wife challenges only the trial court's award of a fifty percent interest in the marital home to her ex-husband. Mr. Yeldell made most of the mortgage payments during the marriage, from 1974 until 1986, but Mrs. Yeldell had owned the house since 1967, long before she was married. Mrs. Yeldell argues that because she owned the house before the marriage, it should be regarded as all hers. We agree with the trial court that the husband's substantial contributions, in the form of the mortgage payments, gave him an equitable interest in the house which must be taken into account in assigning and distributing property under D.C.Code § 16–910 (1981), but we also hold that the house is and must remain the sole and separate property of the wife.

We remand the case to enable the trial court to recalculate the value of the husband's interest.

## I

Evangeline and David Yeldell were married on August 13, 1974, and thereafter lived in a house on Brandywine Street, Southwest.[1] Mrs. Yeldell had owned the property since she purchased it in 1967 for $26,950. After the marriage, Mr. Yeldell made the monthly mortgage payments on the house, and Mrs. Yeldell paid the utility bills and other household expenses. Over the years Mr. Yeldell's mortgage payments totaled more than $50,000.[2] Husband and wife both contributed toward various home improvements, such as remodeling the kitchen and bathroom, although Mr. Yeldell's share of these expenses was greater than that of his wife. In addition, Mr. Yeldell contributed a substantial share of the furniture, as well as a washer and dryer.

Although both parties had children from previous marriages, they had no children together. In July 1984 they moved into separate bedrooms and ceased to cohabit. At the time of trial in October 1986 both were still living in the Brandywine Street house, but Mrs. Yeldell's brief states that Mr. Yeldell has since moved out.

In granting Mrs. Yeldell's request for a divorce, the trial court noted that Mr. Yeldell had "contributed 100% of the mortgage payments and made other direct and indirect contributions to the marriage and to the preservation and appreciation of the property," and that he "continue[d] to be obligated for 50% of the first trust on the property." Accordingly, it awarded Mr. Yeldell a fifty percent interest in the house.

---

\* Judge Pryor was the Chief Judge of the court at the time this case was submitted. His status changed to Senior Judge on November 2, 1988.

1. Except as otherwise stated, our summary of the pertinent facts is based on the trial court's findings of fact.

2. When the Yeldells were first married, in addition to the principal mortgage, the house had a small second mortgage, which Mrs. Yeldell paid off in 1975 with a loan from her credit union. Another second mortgage for $13,800 was placed on the house in 1977. Finally, in 1979, the Yeldells refinanced the house by paying off both outstanding mortgages and taking out a new mortgage for $40,000. The unpaid balance of this loan at the time of trial was about $35,-000. The 1987 assessed value of the house for tax purposes was $73,836.

## II

■ Under D.C.Code § 16–910(a) (1981), property "acquired prior to the marriage" is the "sole and separate property" of the spouse who originally owned it and must be assigned to that spouse upon divorce.[3] For this reason the trial court erred in awarding the husband a fifty percent interest in the house itself, *i.e.*, a fifty percent share of the legal title. The husband is not entitled to such a share because the wife owned the property before she was married. The trial court was correct, however, when it recognized that the husband was entitled to an *equitable* share in the property. The husband's payment of the monthly mortgage obligation during the marriage was a substantial contribution[4] that created such an equitable interest. *Darling v. Darling*, 444 A.2d 20, 24–25 (D.C.1982). *Compare Brice v. Brice*, 411 A.2d 340, 343–344 (D.C.1980).

■ The concept of an equitable interest evolved in the District of Columbia under the pre–1977 statute governing the distribution of property upon a divorce. Under the old law, property was usually regarded as separate, and therefore not subject to distribution by the court, unless it was jointly owned. "There was no statutory authority to reach individually–owned property." *Hemily v. Hemily*, 403 A.2d 1139, 1141 (D.C.1979) (citation omitted). Case law came to recognize that a divorce court, exercising its general equity power, could apportion individually owned property, but in order to do so, "the court was required to find that the nontitled spouse had a legal or equitable interest in the property." *Id.* at 1142 (citation omitted). Such an equitable interest was not readily found except on a showing of substantial contributions by the non-titled spouse. *See Mumma v. Mumma*, 280 A.2d 73, 76 (D.C. 1971).[5] The enactment of the District of Columbia Marriage and Divorce Act in 1977[6] made it possible for trial judges, for the first time, "to reach equitable results in divorce property dispositions without requiring the court to search for strict legal or equitable ownership interests in the nontitled spouse." *Hemily, supra*, 403 A.2d at 1142. *See generally* Green & Long, *The Real and Illusory Changes of the 1977*

**3.** D.C.Code § 16–910 (1981) provides in pertinent part:

Upon the entry of a final decree of annulment or divorce in the absence of a valid ante-nuptial or post-nuptial agreement or a decree of legal separation disposing [of] the property of the spouses, the court shall:

(a) assign to each party his or her sole and separate property acquired prior to the marriage, and his or her sole and separate property acquired during the marriage by gift, bequest, devise, or descent, and any increase thereof, or property acquired in exchange therefor; and

(b) distribute all other property accumulated during the marriage, regardless of whether title is held individually or by the parties in a form of joint tenancy or tenancy by the entireties, in a manner that is equitable, just, and reasonable, after considering all relevant factors including, but not limited to [certain listed factors]. The court shall also consider each party's contribution to the acquisition, preservation, appreciation, dissipation or depreciation in value of the assets subject to distribution under this subsection, and each party's contribution as a homemaker or to the family unit.

**4.** The husband's contributions were of marital funds under section 16–910(b), not his separate funds under section 16–910(a). The wife's earnings during the marriage were likewise marital funds. Although she made only minimal contributions to the mortgages during the marriage (she paid off the original second mortgage), she paid for the utilities and certain other household items. The trial court found that both were able to contribute to household expenses and to home improvements because both were employed, though the husband's income was greater than the wife's.

**5.** In *Hemily v. Hemily, supra*, 403 A.2d at 1142, this court noted that there had been "only two cases in which we have determined that one spouse was entitled to share in the other's individually-owned property," *Hunt v. Hunt*, 208 A.2d 731, 733 (D.C.1965), and *Lyons v. Lyons*, 295 A.2d 903, 905 (D.C.1972). A third case cited by the *Hemily* court in a footnote, *McGean v. McGean*, 339 A.2d 384 (D.C.1975), is not pertinent here because it applied Maryland law. The only case since *Lyons* in which we have upheld a distribution of separately owned property based on a finding of equitable interest in the other spouse is *Darling v. Darling, supra*, 444 A.2d at 24–25. (A claim of equitable interest was rejected in *Brice v. Brice, supra*, 411 A.2d at 343–344, as without sufficient evidentiary support.)

**6.** D.C.Law 1–107, 23 D.C.Reg. 8737 (1977).

*Marriage and Divorce Act*, 27 Cath.U.L. Rev. 469, 482–484 (1978).[7]

Nevertheless, given the clear line drawn by the legislature between property acquired prior to the marriage (section 16–910(a)) and property accumulated during the marriage (section 16–910(b)),[8] we hold that the trial court in this case had no authority to award the husband a fifty percent interest in the real property which had served as the marital home. The court was entirely correct in concluding, on the basis of the evidence, that the husband was "entitled to [an] equitable share in the premises," but it went one step too far in awarding him part-ownership of the house itself. "[T]he fact that some of the payments on the mortgage were made with money which itself was marital property does not alter or affect the status of the [house] as [the wife's] separate property." *Cain v. Cain*, 536 S.W.2d 866, 870 (Mo.Ct. App.1976) (citing authorities). Likewise, the fact that the husband signed the mortgage note in 1979 (see note 2, *supra*) is insufficient to convert the house from the wife's separate property into marital property, since title to the property was never transferred into joint tenancy or tenancy by the entireties. *See Drennan v. Drennan*, 93 Ill.App.3d 903, 906–07, 418 N.E.2d 30, 33–34, 49 Ill.Dec. 386, 389–90 (1981). The husband's equitable interest did not change the house into marital property distributable under section 16–910(b) because his contributions did not transform the house in the way that the business was transformed in *Darling, supra,* 444 A.2d at 24 (character of business originally owned by husband before marriage was changed by wife's efforts during the marriage, thereby making it an asset subject to distribution as marital property under section 16–910(b)). *Compare In re Marriage of Olson,* 96 Ill.2d 432, 440–41, 451 N.E.2d 825, 829, 71 Ill.Dec. 671, 675 (1983) (under Illinois law, separate property becomes marital property when there is significant commingling or contribution of marital assets to separate property).[9]

### III

There remains the question of how to calculate the value of the husband's equitable interest in the house. We think the most appropriate way to do so is to determine the reasonable value, as of the date of the divorce, of his contributions to the property during the marriage. What this means is that the trial court must separately compute two sums: the value of the wife's interest in the property at the time of the marriage [10] and the value of the equity in the property acquired by both spouses during the marriage.[11] It must then subdivide the latter figure into the wife's share and the husband's share. The amount of the husband's equitable interest may not exceed the last of these amounts, *i.e.*, the value of his contributions plus his proportionate share of the appreciation in the value of the house during the marriage.[12]

7. Our equitable interest doctrine is similar to Florida's doctrine of "special equity," which recognizes an interest in an ex-spouse's separate property if the non-owning spouse made "extraordinary" contributions toward acquiring the property. *Ball v. Ball,* 335 So.2d 5, 7 (Fla.1976); *see also, e.g., Palumbo v. Palumbo,* 439 So.2d 232, 232–233 (Fla.Dist.Ct.App.1983), *cause dismissed,* 453 So.2d 1365 (Fla.1984); *Hessinger v. Hessinger,* 378 So.2d 322, 323 (Fla.Dist.Ct.App. 1980).

8. D.C.Code § 16–910, in its present form, was enacted as part of the 1977 Marriage and Divorce Act.

9. The case law on which *Olson* was based has been legislatively overruled in Illinois. *See In re Marriage of Thornton,* 138 Ill.App.3d 906, 917–18, 486 N.E.2d 1288, 1296, 93 Ill.Dec. 453, 461 (1985); *In re Marriage of Harmon,* 133 Ill.

App.3d 673, 675, 479 N.E.2d 422, 424, 88 Ill.Dec. 809, 811 (1985).

10. *I.e.,* the wife's equity in the property as of the date of the marriage. *See Robinson v. Robinson,* 569 S.W.2d 178, 181 (Ky.Ct.App.1978).

11. *I.e.,* the difference between the total equity on the date of the divorce and the wife's equity on the date of the marriage.

12. We have upheld the use of a similar method of calculation to determine the rights of divorced persons in their spouses' pension benefits earned during marriage, where the pension benefits began accruing before the marriage. *See McCree v. McCree,* 464 A.2d 922, 925, 928 (D.C. 1983); *Barbour v. Barbour,* 464 A.2d 915, 917–919 & n. 4 (D.C.1983) (giving an example of the necessary arithmetic).

We emphasize that this figure should be regarded only as a ceiling on the amount of the husband's interest; the court, in its discretion, may determine that the actual value of the husband's interest is somewhat less. For example, a husband whose wife did not work would generally not recover all of his contributions because the wife would be entitled to some credit for her homemaking services.[13] In this case, of course, the wife did work, although the husband's earnings were greater. It is also true that the wife's efforts provided the house to begin with, so that the husband's mortgage payments might arguably be viewed, at least in part, as akin to rent rather than as contributions to the ownership of the house. Nevertheless, in the majority of cases the value of the non-titled spouse's contributions, combined with his or her share in the appreciation in the value of the property, will be the most significant factor in calculating the value of that spouse's equitable interest.

In this context the trial court's finding that Mr. Yeldell made monetary contributions of more than $50,000 becomes particularly important. We note that this figure appears to conflict with Mr. Yeldell's own testimony that his contributions were somewhat over $30,000. Our arithmetic indicates that his contributions were just under $50,000, but we recognize that an exact figure is impossible to calculate. While the evidence shows that the payments on the mortgage between 1979 and 1986 changed from $393 to $473, there is no indication of when, or in what increments, that change took place. Given this uncertain record, the trial court on remand should explain fully how it calculates the value of the husband's contributions. If the court believes that it does not have enough information on which to base a decision, it may in its discretion receive additional testimony.[14]

The husband's equitable interest in the property does not change the fact that the wife still owns the house. The husband's interest is in the nature of an equitable lien. *See Continental Casualty Co. v. Kelly,* 70 App.D.C. 320, 322, 106 F.2d 841, 843 (1939); *Best v. Jenkins,* 260 S.W. 2d 653, 655 (Ky.1953); *Everly v. Schoemer,* 139 W.Va. 392, ——, 80 S.E.2d 334, 338 (1954). It encumbers the property, but it does not give the husband any ownership or possessory interest. *Jamison Coal & Coke Co. v. Goltra,* 143 F.2d 889, 893 (8th Cir.), *cert. denied,* 323 U.S. 769, 65 S.Ct. 122, 89 L.Ed. 615 (1944); *Hansel v. Hartford–Connecticut Trust Co.,* 133 Conn. 181, 191–92, 49 A.2d 666, 672 (1946); *Temple v. Clinton Trust Co.,* 1 N.J. 219, 226, 62 A.2d 690, 693 (1948). To give effect to the lien, the court must assign to it a monetary value. The husband may then enforce it at his option. He may require his ex-wife to pay him the amount of his equitable interest immediately, by selling the house or refinancing it, or at some time in the future. If Mrs. Yeldell sells the house, she must satisfy the lien before receiving any of the proceeds of the sale. This does not mean, however, that she must sell the house; if she can pay Mr. Yeldell the amount of his lien by obtaining money from another source (*e.g.,* by refinancing the house once again, or by borrowing from a relative or from her credit union), she is free to do so. Finally, Mr. Yeldell may seek the aid of the court at any time in enforcing his lien if it becomes necessary.

## IV

In sum, we hold:

(1) The trial court erred in assigning to the husband a fifty percent share in the ownership of the marital home. Because the wife owned the house before the parties were married to each other, D.C.

---

**13.** As we have pointed out in note 4, *supra,* the husband's contributions to the house were of marital property, since they were made from his earnings during the marriage.

**14.** Any determination of the value of the husband's equitable interest must, of course, take

into account the fact that he is still jointly indebted, along with his ex-wife, on the 1979 mortgage note. In deciding how to weigh this factor, the trial court may find it necessary—or at least helpful—to rely on expert testimony.

Code § 16–910(a) dictates that it must remain her sole and separate property. The court has no discretion to treat it as an asset subject to distribution under D.C.Code § 16–910(b).

(2) The trial court ruled correctly in concluding that the husband was entitled to an equitable interest in the marital home. The value of that equitable interest, however, must be recalculated in dollars, not as a percentage of the value of the property.

Those portions of the trial court's judgment which are not contested on this appeal are hereby affirmed.[15] That portion which assigns to Mr. Yeldell a fifty percent interest in the marital home (paragraph 3) is reversed, and the case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

---

15. *I.e.,* we affirm paragraph 1, which grants the divorce; paragraph 2, which restores to Mrs. Yeldell the use of her maiden name; and paragraph 4, which distributes certain items of personal property.