Harold L. **SANDERS**, Appellant,

v.

Imogene C. **SANDERS**, Appellee.

No. 88–897.

District of Columbia Court of Appeals.

Argued Sept. 13, 1990.

Decided Feb. 4, 1992.

---

Reginia L. Jackson, Washington, D.C., for appellant.

Alda A. Anderson, Washington, D.C., for appellee.

Before ROGERS, Chief Judge, and FARRELL, Associate Judge, and BELSON, Senior Judge.*

BELSON, Senior Judge:

This is an appeal from a judgment distributing marital property, fixing child support payments, and awarding attorney's fees in a divorce proceeding. The issues presented are whether (1) the trial court erred in calculating the amount of child support to be paid by appellant husband, particularly in ruling that a certain $2000 payment was not made for child support arrearages; (2) the trial court erred in ruling that a twenty percent interest in the family home was marital property, and in providing that the distribution of that interest to the wife should be deferred on the condition that appellant husband make timely payment of child support; (3) the trial court erred in not allowing appellant a share of appellee's pension benefits; and (4) the amount of the award of attorney's fees was proper.[1] In arguing the second issue, appellant husband takes particular exception to the innovative means the trial court adopted to motivate him to make timely child support payments. For the reasons we explain below, we affirm in all respects, save one. We remand this case

---

* Judge Belson was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on July 24, 1991.

1. Although appellant Sanders argued in his brief that the trial court had erroneously used gross income as a basis for determining child support payments, he withdrew this contention at oral argument.

to the trial court for the limited purpose of assigning a dollar figure to the wife's equitable interest in the marital home and providing that it take the form of an equitable lien in accordance with *Yeldell v. Yeldell*, 551 A.2d 832 (D.C.1988).

## I.

Appellant Harold L. Sanders (Sanders) and appellee Imogene Casey[2] (Casey) were married in the District of Columbia on August 9, 1974. They resided at 1255 4th Street, S.W., Washington, D.C. (the "marital home"). The only child of the marriage was born on August 27, 1978. In 1984 the parties began living separate lives; both, however, remained in the marital home. On April 8, 1985, Sanders filed for divorce based upon the parties' separation for more than one year, and two months later Casey moved out of the marital home, taking the minor child with her. During the separation Casey was awarded *pendente lite* custody of the minor child with $300 per month *pendente lite* support.

The trial court's final order granting Sanders a divorce incorporated prior oral findings of fact and conclusions of law and two written orders. The trial court awarded Casey custody of the minor child (subject to specific visitation rights in Sanders), $500 per month child support, a deferred twenty percent equity interest in the marital home, and $7500 in attorney's fees. The trial court also denied both parties' claims to alimony and Sanders' claim to a share in his former wife's pension benefits.

## II.

■ The trial court is vested with discretion in calculating child support and will be reversed only for a clear abuse of its discretion. *Plumley v. Plumley*, 465 A.2d 393, 394 (D.C.1983) (citing *Moore v. Moore*, 391 A.2d 762, 770 (D.C.1978)). Our review of the trial court's order is "supervisory in nature and deferential in attitude." *See generally Johnson v. United States*, 398 A.2d 354, 362 (D.C.1979). Sanders contends that at the trial in April 1988, the

court should have considered the current level of his income in calculating the amount of child support. He also contends that a particular payment of $2000 he had made to Casey was for child support arrearages, and should have been deducted from the total amount of arrearages owed.

■ The record indicates that Sanders made it difficult for Casey and the trial court to ascertain his 1988 income. Because he failed to provide complete information, the court permissibly focused on the most recent and complete records available, which were for calendar year 1987. Moreover, the court gave consideration to available 1988 information. In calculating the final amount of support payments, the court allowed a reduction from $588 to $500 per month to take into account a slump in Sanders' income in 1988. Under the circumstances, we cannot say that the trial court abused its discretion in considering Sanders' income as it did.

■ With regard to the $2000 Sanders paid Casey, allegedly for child support arrearages, the record supports the trial court's determination that the money was paid in exchange for Casey's signature on a deed to effect the conveyance of real property the husband had owned in North Carolina, and not for child support. Previously, Sanders had never paid child support directly to Casey, but rather through the court. Furthermore, in accordance with Superior Court Domestic Relations Rule 403, the trial court order had required that all child support payments, including arrearages, be made though the Registry of the Court. There is no basis for overturning the trial court's determination that the $2000 was not paid Casey as child support.

## III.

Next we consider Sanders' contentions that the method of calculating Casey's equity interest in the marital home was improper and that conditioning deferral of the distribution of such equity interest on time-

---

2. The trial court's order restored Imogene Sanders to the use of her maiden name, Imogene Casey. We will refer to her as Imogene Casey (or Casey) in the text of this opinion.

ly child support payments was impermissible.

D.C.Code § 16–910 (1989) governs the distribution of property upon the entry of a final decree of divorce. The trial court must

> (a) assign to each party his or her sole and separate property acquired prior to the marriage, and his or her sole and separate property acquired during the marriage by gift, bequest, devise, or descent, and any increase thereof, or property acquired in exchange therefor; and (b) distribute all other property accumulated during the marriage, regardless of whether title is held individually or by the parties in a form of joint tenancy or tenancy by the entireties, in a manner that is equitable, just and reasonable, after considering all relevant factors including, but not limited to: the duration of the marriage, any prior marriage of either party, the age, health, occupation, amount and sources of income, vocational skills, employability, assets, debts, and needs of each of the parties, provisions for the custody of minor children, whether the distribution is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of assets and income. The court shall also consider each party's contribution to the acquisition, preservation, appreciation, dissipation or depreciation in value of the assets subject to distribution under this subsection, and each party's contribution as a homemaker or to the family unit.

*Id.*

Reviewing the specifics of the trial court's distribution, we observe first that it ruled in a manner inconsistent with a sub-

sequently decided opinion of this court, *Yeldell, supra,* 551 A.2d at 832, when it concluded that the marital home, 1255 4th Street, S.W., was part sole and separate property and part marital property. One year prior to the marriage, Sanders individually had purchased the property for $85,-000. He initially paid in $40,000, and entered the marriage with an equity in the property of approximately that amount. The court found that the parties had paid in slightly more than $20,000 in equity out of joint income to reduce the debt on the property to about $20,000.[3] This, along with the consideration that the home had an estimated value of approximately $170,-000 at the time of trial, figured prominently in the court's conclusion that a twenty percent interest was marital property and the remaining eighty percent was Sanders' sole and separate property.

In *Yeldell, supra,* employing the "inception of title" theory, this court held that a home purchased prior to a marriage remains the sole and separate property of the purchaser, regardless of contributions from the non-purchasing spouse during the course of the marriage. 551 A.2d at 834–35. The non-purchasing spouse, however, could be granted an equitable interest in the home based upon the reasonable value of his or her contributions to the property during the marriage, determined as of the date of the divorce. *Id.* at 835. Such an equitable interest having a specific monetary value, which would be in the nature of an equitable lien, would encumber the property but would not give the non-purchasing spouse any ownership or possessory interest in the home. *Id.* at 836.[4] *See Ealey v. Ealey,* 596 A.2d 43, 47–48 (D.C.1991).

---

**3.** During the course of the marriage, the parties placed several refunds from joint tax payments in Sanders' business account. Casey's brief asserts that Sanders "paid the mortgage and other household obligations" for the property out of this account. We find no testimony to that effect. The trial judge, however, examined the bank records (not made part of the record on appeal), which may provide the basis for Casey's assertion.

**4.** According to one commentator, the District of Columbia is the only major jurisdiction that uses the "inception of title" approach. *See* L.

GOLDEN, EQUITABLE DISTRIBUTION OF PROPERTY, App.H at 267–69 (Supp.1990). *Id.* Most other jurisdictions use the "source of funds" approach, employed by the trial court in this instance. At the time of the divorce, the application of the inception of title approach yields essentially the same result as the source of funds approach. The non-purchasing spouse is granted an equitable lien commensurate with her equitable interest, *e.g.,* a lien in a dollar amount equal to twenty percent of the value of the property. As time passes after the entry of the decree, however, the lien amount would not increase or decrease

We recognize that *Yeldell* was decided on December 22, 1988, almost four months after the trial judge's amended order of August 28, 1988, and eight months after his first order dated April 22, 1988. Because this court had not adopted the inception of title approach, a new rule of law, at the time these orders were entered, the question arises whether *Yeldell* should be given retroactive effect.[5] We address that issue now.

When deciding whether to apply a decision retroactively, this court considers the following four factors: (1) the extent of reliance by the parties on a previous rule; (2) the avoidance of altering property or contract rights; (3) the policy of rewarding plaintiffs who seek to initiate just changes in the law; and (4) the desire to avoid unduly burdening the administration of justice with retroactive changes in the law. *Mendes v. Johnson*, 389 A.2d 781, 789–91 (D.C.1978) (en banc).

Applying the first factor to this case, we cannot say that application of *Yeldell* would substantially disrupt any reasonable expectations of the parties with regard to the state of the law of the District of Columbia. In *Brice v. Brice*, 411 A.2d 340, 343 (D.C.1980), this court assumed without deciding that disproportionately high payments for home maintenance and household expenses could create in the non-purchasing spouse an equitable interest in real property acquired prior to marriage by the other spouse. But this court never flatly adopted a rule of law recognizing that a spouse's contributions like those made by Casey could transform such realty into marital property subject to apportionment under § 16–910(b). Property classified as sole and separate property under § 16–910(a), however, cannot be apportioned. *See Turpin v. Turpin*, 403 A.2d 1144, 1147 (D.C.1979). Thus, the application of *Yeldell* does not deprive Casey of the equitable interest that she claims to have acquired under *Brice, supra*—rather, it converts that equitable interest into an equitable lien.

With respect to the second factor, the court's recognition in *Yeldell* of only an equitable lien rather than equitable ownership in the other spouse's separate property does not affect the property or contract rights that Casey acquired in the condominium, which was at most an inchoate claim. Thus, it is of only slight assistance to Casey. The third factor, the policy of rewarding plaintiffs who seek successfully to change the law, does not assist Casey, for it simply has no bearing on this case. Finally, giving retroactive effect to *Yeldell* does not seem likely to burden the administration of justice.

Thus, although the second factor arguably favors Casey to a slight degree, standing alone, it is not enough to persuade us that *Yeldell* should not be applied retroactively.

Applying *Yeldell* to the instant case, we conclude that the trial court erred in finding that twenty percent of the condominium constituted marital property. The condominium is the sole and separate property of Sanders and must be treated as such in the distribution of the property. We see no basis, however, for overturning the trial court's determination that Casey should receive an equitable interest in the home based upon her contributions during the marriage, provided that interest is in the form of an equitable lien.

In considering this issue the trial court first determined, primarily because the parties had used joint income during the marriage to pay the mortgage down to less than $20,000, that it was fair and reasonable under the circumstances to classify a twenty percent interest in the realty as marital property. The court went on to consider a number of factors in determining how to distribute the twenty percent

---

merely because of appreciation or depreciation in the market value of the property.

**5.** A court may establish a new rule of law by (1) overruling clear past precedent, or (2) deciding a matter of first impression in a manner not clearly foreshadowed. *American Trucking Ass'ns v. Conway*, 152 Vt. 363, 566 A.2d 1323, 1332 (1989). Here, *Yeldell* established a new rule of law by the second means.

interest, including Casey's contention that she had contributed over $90,000 to household expenses during the course of the marriage. This was chiefly but not entirely in the form of payments for food, health care insurance, and similar items, and refunds from joint tax return payments which the parties placed in one of Sanders' accounts. The court also made reference to the parties' contributions as homemakers.[6] The trial court found it difficult to place a precise value on Casey's total contributions, but recognized that they were unquestionably substantial and awarded her the entire twenty percent equitable interest in the marital home, deferred in the manner we describe below.

We are persuaded that the trial judge did not abuse his discretion in arriving at his evaluation of Casey's contribution as her corresponding equitable interest. To conform with *Yeldell, supra,* the trial court must convert Casey's twenty percent equitable interest into an equitable lien. Therefore, we will remand this case to the trial court to permit it to calculate the dollar value of Casey's twenty percent interest to be determined as of the time of the divorce. *See Yeldell, supra,* 551 A.2d at 837 ("value of ... equitable interest ... must be recalculated in dollars, not as a percentage of the value of the property.").

■ We also reject Sanders' contention that the trial court abused its discretion in deferring, upon specific conditions, Casey's receipt of her interest in the marital home. Pursuant to the trial court's order, Casey's receipt of her equity interest was deferred and Sanders could remain in the house provided that Sanders met the following conditions:

■ [Sanders] shall bring child support arrearages in the amount of Three Thousand Five Hundred Dollars, ($3,500.00) current on or before October 1, 1988; [2.] [Sanders] shall not fall more than forty five (45) days in arrears as to any child support payment which is payable under the terms of this Order.

The court's order further provided that if Sanders should default on any of these conditions, Casey could write to Sanders and require him to divide the real estate. Additionally, Casey could extract her interest if the property were sold, if Sanders should die, or three years after the minor child turns twenty-one. Under those conditions, the maximum amount of time from the April 1988 order that Sanders could defer Casey's interest is fourteen years, *i.e.,* eleven years until the minor child, then ten, would reach twenty-one plus three additional years.

We find this manner of distributing the equity interest to be reasonable (subject, as noted above, to the requirement that the interest be in the form of a lien). Sanders had a history of being delinquent in making child support payments. The order is intended to serve as an incentive to encourage him to make timely payments. Moreover, provided Sanders cooperates, the parties can arrange the transfer to Casey of the amount secured by the equitable lien upon the occurrence of a triggering event without resorting to the court. It is only if Sanders should refuse to distribute Casey's money when she is entitled to it under the order (as revised) that she can file a motion for appointment of a trustee. The trial court would appoint a trustee to sell the real estate only if it was satisfied that the sale provision had been triggered pursuant to the terms of the court order.[7] Sanders

---

6. The trial court stated in its oral ruling:
 As to contributions as a homemaker, both parties contributed to the home early on and I find the defendant, at least nothing inconsistent with the suggestion that she did the bulk of the cooking and cleaning and household chores. As the relationship deteriorated, it seemed to move to a situation where each party was contributing largely to the daughter and not the home as such.
 The parties do not address the question whether the consideration of each party's "con-

tribution as a homemaker," specifically called for by § 16–910(b) when the court is distributing marital property as the court purported to do in this case, is also appropriate when the court is considering whether a party is entitled to an equitable lien on property which is solely that of the other partner under § 16–910(a). We have no occasion to address that issue here.

7. Contrary to Sanders' suggestion, in deciding whether the sale provision had been triggered the court could consider the reasons, if any, for

has cited no authority that suggests that the trial court is precluded from establishing linkage between the timing of the distribution of Casey's interest and the performance of Sanders' obligation to make child support payments. In our view, it was entirely appropriate for the court to structure the method of distributing Casey's interest in a way that encouraged Sanders to meet his support obligations.

### IV.

 Next Sanders contends that he should have been awarded a share of Casey's pension benefits. The distribution of property in accordance with D.C.Code § 16–910 (1989) may encompass pension rights acquired during the course of the marriage. *Barbour v. Barbour,* 464 A.2d 915, 918–19 (D.C.1983). Such property is to be distributed in an equitable, just, and reasonable manner. D.C.Code § 16–910(b) (1989).

The trial court, in determining the overall distribution of marital property, carefully considered each party's financial resources. The court's decision not to award Sanders a share in Casey's pension benefits was a part of its overall plan for the distribution of the marital property. The court assessed the parties' respective abilities as of the time of their divorce to face the demands of later years. The decision not to allocate her pension benefits to Sanders presumably was based on an assessment of all relevant circumstances. We perceive no abuse of discretion. *See Barbour, supra,* 464 A.2d at 922.

### V.

 Finally, Sanders contends that the award of $7500 in attorney's fees lacked evidentiary support. Our review of the attorney's fee award is deferential because such award is committed to the sound discretion of the trial court. D.C.Code § 16–911(a)(1) (1989); *Owen v. Owen,* 427 A.2d 933, 939 (D.C.1981). The trial court should consider the quality of services rendered, counsel's skills, the result of the litigation, the difficulty of the case, Sanders' ability to pay, and the earning capacity of both parties. *See Rachal v. Rachal,* 489 A.2d 476, 478 (D.C.1985). Here, there was evidence to the effect that Casey incurred approximately $17,500 in legal fees. Furthermore, Sanders never contended before the trial court that the amount of fees was unreasonable. Although this court has required detailed findings to support an award of attorney's fees greater than the court made here, *Swift v. Swift,* 566 A.2d 1045, 1047 (D.C. 1989), the award of $7500 in this case is relatively modest and a hearing on this matter upon remand would entail additional expense to both parties. *Id.* at 1047 n. 2. Moreover, appellant has not convinced this court that the attorney's fees award was so arbitrary as to amount to an abuse of discretion. *Rachal, supra,* 489 A.2d at 478; *Steadman v. Steadman,* 514 A.2d 1196, 1200 (D.C.1986) (citing *Ritz v. Ritz,* 197 A.2d 155, 156–57 (D.C.1964)). Accordingly, we will not disturb the award.

### VI.

In sum, the trial court erred in classifying twenty percent of the condominium as "marital property." Because Sanders purchased the property prior to the marriage, it remains his sole and separate property pursuant to D.C.Code § 16–910(a). The trial court correctly determined, however, that based upon Casey's contributions during the marriage, she is entitled to an equitable interest in the home. A subsequent ruling of this court requires that the interest be in the nature of an equitable lien. *Yeldell, supra,* 551 A.2d at 836. Thus, we remand this case to the trial court for the limited purpose of calculating a dollar value for Casey's twenty percent equitable interest in the home pursuant to *Yeldell, supra,* 551 A.2d at 837. The assigned dollar value must reflect Casey's equitable interest as of the time of the divorce. The rulings of the trial court from which Sanders appeals are otherwise affirmed.

*So ordered.*

Sanders' failure to comply with conditions of the court order.